### IN THE

## SUPREME COURT OF THE STATE OF lGEORGIA,

### AT ATLANTA,

### AUGUST TERM, 1860.

Present—JOSEPH H. LUMPKIN, ⎫
        RICHARD F. LYON,   ⎬ Judges.
        CHARLES J. JENKINS, ⎭

---

## WADE vs. POWELL.

The defendant accepted the trust for complainant of thirty negroes by a deed from her father settling the negroes to her separate use for life and at her death to her children. The husband of complainant afterwards sold and conveyed to defendant seven slaves, absolutely, at the price of $2,000, Defendant, also, advanced to one R. M. $3,100 and took his conveyance for fifteen other slaves—the fifteen had been the husband's, but had been sold as his property at Sheriff's Sale and bought by R. M. The defendant gave the husband a written agreement allowing him to take the twenty-two slaves and work them, paying to him interest on the amount the husband was due to him, stated at $5,800, and when that was paid off, principal and interest, he agreed to deed and settle said slaves as the husband should direct. After this, an account was taken between defendant and the husband, of additional advances, made by defendant for the husband, for the separate estate and purchases made by him, and of such sums and means as the husband had turned over to him, and the hire of such of the negroes of the wife, as defendant had employed up to that time, and took absolutely of the twenty-two slaves, then increased to twenty-three, eleven of the negroes, and allowed the husband credit for them at prices agreed upon, and. left a balance still due to defendant of $3,698. Defendant consented that the husband might retain possession of the remaining thirteen and pay the $3.698 at stated times and in

---

٭ ARBITRATION. "The plaintiff's attorney has authority to refer the matter in controversy in a pending suit to arbitration without the special permission of his client. Wade v. Powell, 31 Ga. 22; 1 Am. and Eng. Enc. of L., 956; Morse on Arbitration, p. 15 et seq.; Weeks on Att's., §233, and cases cited." McElreath v. Middleton, 89 Ga. 83 (1).

ARBITRATION, TWO MODES FOR SUBMISSION PROVIDED BY THE CODE. "There are two modes provided by the Code for the submission of matters in dispute to arbitration; one under the Act of 1856, codified in §4485 et seq. of the Code of 1895, and the other from the common law, in §4474 of the Code of 1895, et. seq. Under the former

Wade vs. Powell.

stated amounts, and if the husband made these payments, the negroes were in that case to be the property of complainant; if not paid, the money was to be made out of the remaining thirteen. Afterwards a new agreement was entered into *with the complainant*, in which the balance is stated to be $3,200, $500 of which was to be paid in January, 1852, the balance in five equal annual installments. If this amount was paid up promptly at the times stated, with the interest, defendant was to convey the thirteen negroes to the complainant, subject to the same trust as contained in her father's deed; if payment were not made, the agreement to be void, and defendant was to make the money out of the negroes. The defendant subsequently advanced for the use of the separate estate of the complainant $1,012 and for the husband $400. No part of the $3,200, or $1,012, or $400 being paid to defendant, he commenced an action of trover for the thirteen negroes; also a separate action, as trustee, for those contained in the deed from complainant, to take them from the possession of the husband. The complainant filed a bill against defendant for account of the hire of some of the trust negroes defendant had in 1849 and 1850, that was included in the settlement with the husband in January, 1851; also for account of the hire of the twenty-two negroes included in the conveyance from her husband, and from Martin to defendant, also for all the assets that the husband had turned over, and for an account generally of his trust from his acceptance. The husband brought trover for the eleven negroes, taken by defendant in settlement in January, 1851. Some other suits, either directly or collaterally, were pending between the parties. The solicitors of the complainant, the husband, and the next friend of complainant in her bill, agreed in writing with the defendant for the purpose of putting an end to the litigation and making a final and full settlement of all matters in dispute between them, to refer them to two arbitrators named therein who were to select an umpire, and this agreement, or rule of submission so agreed on, was made the rule of the Court. In accordance with the agreement, the whole of the twenty-two negroes and increase, both those in the possession of defendant as well as those in the possession of complainant, were delivered to the arbitrators to dispose of according to the award. The arbitrators and umpire took a full account on both sides from the beginning, and for the balance found to be due to defendant, paid him off in negroes, at prices put upon them by the arbitrators; settled their own fees, etc. This award was made the judgment of the Court. Complainant filed a bill to review and reverse that award. *Held*

1. That a bill of review did not lie to correct the errors of this award or judgment.

2. That the attorney and solicitors of complainant had power to make the reference under the sanction of the Court, without the consent of complainant.

3. It was not error in the arbitrators to settle the accounts between defendant and husband, especially as such settlement inured to the benefit of complainant

4. That it was no error for the next friend to sign and agree to said submission, and that he did so only made it the more perfect.

5. In arbitrations, other than those provided for by the arbitration Act of 1856,

---

there must be three arbitrators; under the latter any number of arbitrators will do, and there need be no order to make the award the judgment of the Court, but it is binding without, unless attacked for fraud in the arbitrators or party, or a palpable mistake of law, or reference to chance or lot. In either case, a guardian may make the submission and the award will be binding on the wards." Jones *v.* Bond, 76 Ga. 517, 522.

**AUTHORITY OF COUNSEL TO BIND CLIENT.** "A married woman who entrusts the defense of a suit at law to counsel chosen by herself, is bound by the acts of such counsel to the extent that any other suitor would be; and if her plea be withdrawn by her counsel on terms executed by the other side, and judgment be rendered against her without any fraud on the part of her adversary or his counsel, such judgment will conclude her." Glover *v.* Moore, 60 Ga. 189, 192. And see 1 Ga. 280; 2 Ga. 275; 6 Ga. 172; 42 Ga. 168; Civil Code of 1895, §3988."

Wade vs. Powell.

the rule prescribed by that Act, that the arbitrators may settle compensation for their services, may be adopted by the Court as a proper rule in like cases.

6. It was no error in the arbitrators in this case to pay off the balance due to defendant with the negroes on which the advances and debts were contracted, or to allow a credit for the hire of complainant's negroes, when complainant has received the corresponding benefit from the advances made and the surplus left.

7. It is not compound interest to add interest on the balance up to the credit and deduct credit from the sum of principal and interest, and then to add interest on balance, etc., when the credit exceeds the interest, etc.; but such rule is the one prescribed by the statute.

8. As this arbitration was not under the arbitration Act of 1856, it was not error not to furnish the parties with copies of the award.

9. The children of complainant had no interest in the matters in arbitration, and it was not necessary that they should be parties, nor have their interests been affected by the award.

10. There was no error in allowing defendant and the husband to be sworn as witnesses in the arbitration, neither having sworn to anything untrue, or prejudicial to complainant.

11. The award is in the highest degree beneficial to complainant, and ought not to be disturbed.

In Equity, from Murray Superior Court. Decided by Judge CROOK, at the October Term, 1859.

Peyton L. Wade instituted two actions of Trover in Murray Superior Court, against Jacob S. P. Powell, for the recovery of divers negro slaves. In one of the actions he was plaintiff in his own right, and in the other he was plaintiff as trustee for Mrs. Sarah A. Powell. The said Wade, also, commenced an action of Ejectment in Whitfield Superior Court, in favor of John Doe, ex-demise, Peyton L. Wade, *et al.*, against Richard Roe, casual ejector, and Samuel Street, tenant in possession. Jacob S. P. Powell commenced an action of Trover, in Whitfield Superior Court, against Jesse Wade, for the recovery of divers negro slaves. Sarah A. Powell, by her next friend, James Edmondson, filed her Bill in Equity, in Murray Superior Court, against Peyton L. Wade and Jacob S. P. Powell, for Discovery, Relief, and Injunction. She also filed a similar Bill in Whitfield Superior Court, against Jesse Wade, Peyton L. Wade, and Jacob S. P. Powell. John L. Edmondson, in the place of Dawson A. Walker, trustee, etc., and Jacob S. P. Powell, filed their Bill in Equity in Whitfield Superior Court, against

**"Upon the power of counsel to bind their clients** in cases, bearing more or less directly on the point made here, **see Code and cases below cited by counsel.** Civil Code of 1895, §§4417-8: Wait's Ac. and Def., 442, 444; 4 Brews Penn., 106; 7 B. Munroe, 126; 31 Ga. 22; 36 Ib. 108; 39 Ib. 394; 54 Ib. 557; 4 Iredell, 481; 2 Md. Chan. 143, 425; 1 Barb. 519; 23 Tex. 104." Hill *v.* Printup, 67 Ga. 734.

"The **counsel of record representing married women** in pending litigation, **have an ample power to bind their clients** in conducting and disposing of such litigation, as have the counsel of other suitors. And

Peyton L. Wade, for discovery, relief, injunction, etc. On the 15th day of April, 1857, whilst all these cases were pending and undetermined, it was agreed, in writing, that— "In order to settle the above and foregoing cases, and all matters in dispute between the parties thereto, they have agreed, and do hereby agree, to refer the same to the arbitrament and award of Dawson A. Walker and John W. Hooper, and an umpire to be selected by the said Walker and Hooper, to decide any matter of law or fact, on which said Walker and Hooper may not be able to agree, to be settled and decided according to the principles of equity and justice, on the following basis, that is to say: All the amount, to wit, thirty-one hundred dollars, paid by Peyton L. Wade to Robert Martin, and a judgment in favor of Peyton L. Wade against the said Jacob S. P. Powell, with the legal interest thereon from the time of its payment, shall be allowed the said Peyton L. Wade; and all the money that has been advanced or loaned to, or paid for the said Jacob S. P. Powell, by the said Peyton L. Wade; and all that may be due and owing by the said Jacob S. P. Powell to the said Peyton L. Wade, with the legal interest thereon, from the time it was advanced, loaned, paid, or became due, shall be allowed the said Peyton L. Wade; and, also, the amount paid by the said Peyton L. Wade for a note made by the said Jacob S. P. Powell, which is now sued in Murray Superior Court, with the legal interest on the amount paid, shall be allowed to the said Peyton L. Wade; and, also, the amount paid on a draft drawn by the said Jacob S. P. Powell on Peyton L. Wade, in favor of C. T. Cunningham & Co., with the legal interest on the amount paid, shall be allowed the said Peyton L. Wade; and, also, the money that has been paid by Peyton L. Wade, with the legal interest thereon, for a settlement of land called the Seaborn Jones place, and for which the action of ejectment, before stated, was brought (the action being now enjoined by a bill in equity), shall be allowed the said Peyton L. Wade; and, also, all the money that has been advanced to, or paid for, the said Sarah A. Powell and her children, or either of them, and all goods or other things that have been purchased for the said Sarah A. Powell and her children, or either of them, by the said Peyton L. Wade, with the legal interest thereon, shall be allowed the said Peyton L. Wade; and, also, all the articles, of every kind, furnished

decrees rendered with consent of counsel, without fraud, are obligatory upon their clients, the consent of counsel being in law the consent of the parties they represent. A case very much in point is Lewis v. Gunn, 63 Ga. 542; other relevant cases are Mashburn v. Gouge, 61 Ga. 512; Glover v. Moore, 60 Ga. 189; Wingfield v. Rhea, 73 Ga. 477. As to the powers of counsel, see Wade v. Powell, 31 Ga. 1; Lyon v. Williams, 42 Ga. 168." Williams v. Simmons, 79 Ga. 655.

for the trust estate, and all the money advanced, paid, laid out and expended by the said Peyton L. Wade to and for the use and benefit of the trust estate in his hands, with the legal interest thereon, shall be allowed the said Peyton L. Wade. On the other hand, the said Peyton L. Wade shall account for and allow as a credit on the money advanced by, or that may be due and owing to him; all the money, solvent notes, cotton, corn, peas, fodder, mules, horses, hogs, wagons, sheep, or any other thing or things of value which he has received from the said Jacob S. P. Powell, or the trust estate, to be allowed and valued at a fair price at the time they, and each of them, were received; and the said Peyton L. Wade shall account for and allow as a credit on the money advanced by, or owing to him, a fair hire of each and all the negroes belonging to the trust estate, and for each and all the negroes in dispute between the parties, for all the time the said Wade has had the said negroes employed for him or worked for his use and benefit; the hire to be estimated as if hired on a twelve months' credit, and to be allowed as a credit at the end of each and every year, but in fixing the amount of hire, the expense of feeding and taking care of the old and infirm negroes, the clothing, feeding and nursing the young and children, shall be taken into the account, and the hire assessed by taking all the negroes, young and old, big and little, together.  In taking the account between the parties, if Peyton L. Wade should be due and owing more than is due him, the interest is to be counted against him in the same way and manner as is hereinbefore provided for him, and he is to pay up whatever sum he may be due and owing, and deliver up the negroes that are in his possession and in dispute; but if more is found to be due the said Peyton L. Wade than he has received, the amount is to be paid him immediately, or a note, with approved security, payable ...... months after date, with interest from date, shall be given him for the sum due him; and if neither of these is done, said Peyton L. Wade is to keep the negroes now in his possession, or enough of them, at a fair valuation to be made by the arbitrators, to pay the amount due him; and if the negroes in the possession of the said Wade are not enough to pay him at valuation what may be due him, then he is to take enough of the negroes at valuation, in the possession of the said Jacob S. Powell, and for which said Wade has sued said Powell, in his

own right, in the Superior Court of Murray county, to pay the amount due him; and the said Wade is to keep such of the negroes as he chooses, to pay himself, at valuation, first taking of the negroes in his possession; but if this is done, it is not to affect the title that the said Peyton L. Wade now has or claims to said negroes, it being the distinct understanding of the parties hereto, that this agreement is made merely as the basis of a *compromise* of disputes, for the purpose of putting an end to litigation, neither of the parties admitting, or intending to admit, a want of title in them to any of the property in dispute, but simply are willing to compromise the matters in dispute on the terms herein stated. And in order to carry into effect the award that may be made, without let or hindrance, it is hereby agreed by the parties, that all the negroes in dispute, which are in the possession of the said Peyton L. Wade, and all the negroes in dispute which are in the possession of the said Jacob S. P. Powell, shall be placed in the possession and under the control of the arbitrators before the award is made, to be, by them, delivered to the party or parties entitled thereto, according to the award and decision. And it is further agreed, that all the cases before stated shall stand as they are, until the award is made and executed; and it is further agreed that all the evidence now taken in said cases, shall or may be used before the arbitrators; and it is further agreed that the costs in each of said cases shall be paid as the arbitrators may decide, according to justice and equity; and it is further agreed, that the arbitrators shall meet at Dalton, on the first day of September next, to decide the matters in dispute."

This agreement was dated the 15th of April, 1857, and signed by J. S. P. Powell, J. A. R. Hanks, James Edmondson; Augustus R. Wright, attorney and solicitor for the trust estate; John W. H. Underwood and Dawson A. Walker, attorneys for Mrs. Sarah A. Powell, and trustees of Mrs. Street; and John W. Hooper, Warren Akin and J. A. W. Johnson, attorneys and solicitors for Peyton L. Wade.

At the April Term, 1857, of Whitfield Superior Court, it was "Ordered by the Court, that the cases mentioned and set forth in the foregoing agreement, and submission, be referred to arbitration according to the stipulations contained in said submission and agreement, and that the award that may be made shall be the final judgment of the Court, freed

Wade vs. Powell.

from all objections and exceptions, and that the Judge of the Superior Court of the Cherokee Circuit, at chambers, in vacation, shall have the right and power to order the award as the judgment of the Court, to be entered on the Minutes of the Superior Court of Murray county, and of Whitfield county, and to pass all orders, judgments and decrees, necessary and proper for carrying the said award and judgment into effectual execution; and may remove the trustees, and appoint new ones, and pass every order, necessary and proper, for freeing the trust estate from debts or encumbrances, in the same manner and to the same extent as he could or might do by the aid and concurrence of a special jury, at a regular term of the Superior Courts in the counties aforesaid." This order was signed by Warren Akin and John W. Hooper, solicitors and attorneys of Peyton L. Wade; J. W. H. Underwood and Dawson A. Walker, solicitors for Mrs. Sarah A. Powell and others, as he is marked on the record; James Edmondson, next friend of Mrs. S. A. Powell, and by the Hon. Joseph E. Brown, Judge of the Superior Court, presiding.

Thomas R. R. Cobb, Esq., was selected as umpire, by the said John W. Hooper and Dawson A. Walker, and by them requested to act with them and hear the evidence under said submission.

The arbitrators and umpire met at the time and place designated in the submission, and made up and rendered the following award, to wit:

"We, the arbitrators, appointed under a submission and order of the Superior Courts of the counties of Murray and Whitfield, having met at Dalton on the first, and second, and third days of September, 1857, and having made choice of Thomas R. R. Cobb as the umpire under said submission, and having heard all the evidence submitted by the parties and their counsel, and considered fully the several matters submitted to us, have agreed upon the following award—the said umpire deciding all questions of difference as they arose between us in the investigation—and we do hereby award as follows:

"We find that there was due and owing Peyton L. Wade, on a settlement of the accounts between the parties, on the first day of September, 1857, Nine Thousand Two Hundred and Eighty-seven Dollars and Forty-four Cents. We annex hereto, marked Exhibit A, a statement by which it will be

seen what amounts are allowed the parties, and the calculation by which this result was obtained. For the payment of this amount, we award that Peyton L. Wade retain the following negroes in his possession, at the following prices and valuations as agreed on by us (the other parties declining to pay the money or give the note with approved security, as provided in the submission), viz.: Mingo, an old man, $100.00; Dinah, an old woman, $1.00; Harry, a man, $1,000.00; Juby, a man, $800.00; Sue, a woman, $800.00; Jeff, a young man, $1,100.00; Lucy, a young woman, $900.00; Rachel, a girl, $700.00; Delia, a girl, $500.00; Ben, a boy, $400.00; Prince, a boy, $200.00; and Lovey, an old woman, $1.00, making in all the sum of $6,502.00. We further award, and have delivered, to the said Peyton L. Wade, the following negroes, at the following prices and valuations as fixed and agreed on by us: Daniel, a mulatto boy, $1,000.00; Reuben, a mulatto boy, $800.00; Jim, a negro man, $1,050.00; Jim, a small child, son of Bessy, $185.44, making in all the sum of $2,935.44, and which, added to the first lot of negroes aforesaid, makes $9,437.44. Deduct from this sum the amount found to be due to Wade, and there is left the sum of $250.00, which amount Mr. Wade will pay to the umpire for Mr. Powell's share of his fee. We award, that, in all the cases submitted, the fees of the witnesses shall be paid by the parties by whom the same were subpœnaed respectively, and that the costs of the officers of Courts, including costs of commissions for interrogatories, be paid by the plaintiffs or complainants in each case respectively.

"We award the following fees to the arbitrators and umpire in this matter, to be paid equally by the parties, i. e., one-half by Peyton L. Wade, and the other half by J. S. P. Powell and the trustee of Mrs. Powell—the fees of the arbitrators being settled by the umpire, and the fee of the umpire having been settled by the parties, viz.: To John W. Hooper, $500.00; to Dawson A. Walker, $500.00; and to Thomas R. R. Cobb, $500.00."

This award was signed by the arbitrators and the umpire.

## "EXHIBIT A."

**1849.**　　　　　*Amounts found due to P. L. Wade.*

| | | |
|---|---|---|
| April 1st. Amount paid to Robert Martin.........$3,100 | 00 | |
| " of Judgment *vs.* J. S. P. Powell. 1,700 | 00 | |
| " advanced on Cotton.......... 400 | 00 | |
| " paid Snider, Lathrop & Nevitt for Goods ............ 29 | 49 | |
| " paid Wm. Remshart, for Goods 9 | 75 | |
| " paid N. B. Knapp .......... 4 | 50 | |
| " " for one barrel of Flour.... 8 | 69 | |
| " " for 30 yards Osnaburgs... 3 | 00 | |
| " " to Mr. Eastman ......... 5 | 75 | |
| " " to Snider, Lathrop & Nevitt, for Carolina .......... 30 | 06 | |
| " paid for a Bonnet .......... 6 | 00 | |
| ". " to S. Solomons, for Goods. 338 | 87 | |
| " " for 1,360 doz. Oats, at 15c. per dozen ............ 204 | 00 | |
| " paid for articles bought of S. Jones ............ 332 | 00 | |
| " " for 3,000 bushels Corn, bought of S. Jones......... 600 | 00 | |
| " paid for Hogs and Cows to S. Jones ............ 152 | 50 | |
| " " for Hogs and Cows to Norton ............ 60 | 00 | |
| " " to P. L. Wade, Jr....... 30 | 00 | |
| " " to J. Burns, for Oxen ..... 65 | 90 | |
| " " for articles bought of Norton ............ 26 | 75 | |
| " of Cash advanced to Dalton.... 200 | 00 | |
| " paid for 600 bushels of Corn, bought of Norton ......... 100 | 00 | |
| " paid to J. D. Wade, for carrying negroes, &c. ......... 51 | 13 | |
| " paid expenses of Carolina from Murray ............ 16 | 00 | |
| " paid Jesse Wade's account for Provisions, &c. ......... 536 | 85 | |

Total...............$8,010 33

**1850.**　　　　　*Amounts found due to P. L. Wade.*

| | | |
|---|---|---|
| Jan. 1. The Seaborn Jones and Wade place......$2,500 | 00 | |
| Cash through Jesse Wade ............ 100 | 00 | |
| Amount paid Snider, Lathrop & Nevitt... 86 | 84 | |
| " " O. Johnston ............ 29 | 42 | |
| " " M. Eastman ............ 33 | 44 | |

|  |  |  |
|---|---|---|
| "          "   Expenses of Miss Carolina..... | 18 | 88 |
| "          "   Snider, Lathrop & Nevitt ..... | 4 | 68 |
| "          of Jesse Wade's ac't for provisions.. | 325 | 00 |
| "          of Rent of Norton place........... | 100 | 00 |

Total ... ... ... .... ... ... ....$3,198 26

### 1851.

|  |  |  |
|---|---|---|
| Jan. 6. Cash paid in Scriven .................$ | 700 | 00 |
| One Umbrella ... .... ... ... ... ... | 2 | 00 |
| Cash paid Savannah Republican ..:...... | 11 | 00 |
| "          "   Southern Cultivator ... ... ... | 3 | 00 |
| "   loaned to pay Mrs. Farmer's land.... | 500 | 00 |
| Amount of Blacksmith's account for 1851. | 33 | 90 |
| Rent of Norton place for 1851........... | 150 | 00 |

Total......................$1,399 90

### 1852.

|  |  |  |
|---|---|---|
| Rent of Norton place for 1852............$150 | 00 |
| Amount paid for Jesse Miller's Note........ 400 | 00 |

Total........................$550 00

### 1853.

Feb. 11. Draft in favor of C. T. Cunningham & Co.$1,012 64

### 1855.

· October. Amount paid to John B. Powell, for medical services.. ... ... ... ... ... ... ... ....$130 00

1849.    *Credits to which J. S. P. Powell is entitled.*

|  |  |  |
|---|---|---|
| April 1. Two Notes on Erwin .................$1,000 | 00 |
| 49 bales of Cotton sold .............. 1,000 | 00 |
| Corn, Potatoes, Peas, Hogs, Sheep, planta- | | |
| tion tools, &c., delivered in Scriven.... | 807 | 92 |
| Four Mules, at $75 each .............. | 300 | 00 |
| Amount claimed for Rice .............. | 9 | 69 |
| Amount claimed for Lumber..... ..... | 4 | 50 |
| Amount allowed for expenses and work on | | |
| Centre place ... ... ... ... .... | 130 | 12 |
| Board of Mr. Wade and family (four | | |
| months) ... .... ... ... ... ... ... | 150 | 00 |
| Provender for horses and servants, same | | |
| time ... .... ... ... ... ... ..... | 25 | 00 |
| Hire of negroes for 1849, deducting ex- | | |
| penses ... ... ... ... ... ... ..... | 1,221 | 00 |

Total.................$4,648 23

Wade vs. Powell.

### 1850.

Hire of negroes for 1850, deducting expenses ..... ... ... ... ..... ..... 1,410 00

### 1851.

Hire of negroes for 1851, deducting expenses ... ... ... ... ... ... ..... $480 00

Smett's Draft ... ... ... ... ... ....    70 79

Total... ... ... ... ... ... ..... $550 79

### 1852.

Hire of negroes, for 1852, deducting expenses ...... $480 00

One Bay Mare ... ... .........................    125 00

Two Mules ......... ......... ... ... ...    125 00

Oats, $75, and Shoats, $13.................    88 00

Total ......... ......... .....$818 00

### 1853.

Hire of negroes, deducting expenses.............$380 00

### 1854.

Hire of negroes, deducting expenses ...............$395 00

### 1855.

Hire of negroes, deducting expenses ...............$400 00

### 1856.

Hire of negroes, deducting expenses .............$410 00

### 1857.

Hire of negroes, deducting expenses ..:............$275 00

*Settlements of accounts on the amounts found due by us.*

### 1849.

Amount paid by P. L. Wade ..................$8,010 33

Interest from the 1st June to 1st January, 1850....    327 08

                              $8,337 41

Deduct credits for 1849 .............. $4,648 23

Interest for same time ..............    189 79    4,838 02

Balance due 1st January, 1850.........    $3,499 39

Interest for one year, to January 1st, 1851    ·    244 95

                             $3,744 34

Add amount paid in 1850...........$3,198 26

| | | | |
|---|---|---|---|
| Interest for eleven months ............ | 205 | 22 | 3,403 48 |
| | | | $7,147 82 |
| Deduct credits for 1850 ............ | | | 1,410 00 |
| | | | |
| Balance due 1st January, 1851......... | | | $5,737 82 |
| Interest for one year, to 1st January, 1852 | | | 401 54 |
| | | | $6,139 46 |
| Add amount paid in 1851 ..........$1,399 | | 90 | |
| Interest for seven months ........... | 57 | 15 | 1,457 05 |
| | | | $7,596 51 |
| Deduct credits for 1851.... ..........$550 | | 79 | |
| Interest allowed ...... ...... ....... | 1 | 25 | 552 04 |
| | | | |
| Balance due 1st January, 1852........ · | | | $7,044 47 |
| Add interest for one year ............ | | | 493 10 |
| | | | $7,537 57 |
| Add amount paid in 1852 ............$550 | | 00 | |
| Interest allowed ......... ........... | 28 | 00 | 578 00 |
| | | | $8,115 57 |
| Deduct credits for 1852 ..............$818 | | 00 | |
| Interest allowed .......... .......... | 11 | 88 | 829 88 |
| | | | |
| Balance due 1st January, 1853 ........ | | | $ 7,285 69 |
| Interest from 1st Jan., 1853, to 1st Sept., 1857, | | | 2,379 94 |
| Amount paid out in 1853................. | | | 1,012 64 |
| Interest from 11th Feb., 1853, to 1st. Sep., 1857 | | | 321 73 |
| Amount paid out in 1855 ................. | | | 130 00 |
| Interest from 1st Oct., 1855, to 1st Sep., 1857.. | | | 17 44 |

| | | | |
|---|---|---|---|
| Total ...... ... ... ... ...$11,147 44 | | | |
| Deduct credits for 1853 ..............$ 380 | | 00 | |
| "       "       " 1854 ... ... ... ... | | 395 | 00 |
| "       "       " 1855 ... ... ... ... | | 400 | 00 |
| "       "       " 1856 ... ... ... ... | | 410 | 00 |
| "       "       " 1857 ... ... ... ... | | 275 | 00 |
| | | $1,860 | 00 1,860 00 |

Balance due P. L. Wade Sep. 1st, 1857.....$9,287 44

This award was afterwards made the judgment of the Superior Courts of Murray and Whitfield counties, by orders and decrees regularly had and taken in accordance with the terms and stipulations of the submission and rule of reference aforesaid.

At the April Term, 1858, of Whitfield Superior Court, a motion was made to set aside and vacate the judgment of the Court, making the said award the judgment of the Court, which motion was based upon the following grounds, to wit:

1st. Because the arbitrators failed to comply with the statute laws of Georgia in such cases made and provided, and because of the copy affidavits of James Edmondson and Sarah A. Powell hereto attached, marked 1 and 2.

2d. Because a capital mistake was made by the said arbitrators, and acknowledged to one of the parties to said arbitration afterwards.

3d. Because the arbitrators exceeded their authority in going outside of the basis of submission, and in acting on motives and making an award on matters not submitted.

4th. Because there was no award made, according to the basis of submission, and the causes of difference which were submitted.

5th. Because the calculations and the principles upon which interest was computed, were contrary to the law.

The affidavit of James Edmondson referred to in the first ground of the motion states: "That he, being very ill, was in the room but once, and then only for a short time, whilst the arbitrators were investigating the matters submitted as aforesaid, and that he has not seen or been furnished with a copy of the award made by the arbitrators."

The affidavit of Sarah A. Powell, referred to, states: "That she never signed, or authorized any one for her, to sign the submission, and that the reference of the cases to arbitrators was made without her knowledge or consent, and without consultation with her, and that she has never been furnished with a copy of the award."

Opposed to these affidavits was the affidavit of John W. H. Underwood, Esq., stating: "That he was one of the counsel of Mrs. Sarah A. Powell in the cases before stated, and that in addition to his professional obligation he felt great solicitude for the welfare of Mrs. Powell, and, owing to the complicated character of the controversy involved in the cases, submitted

to arbitration his judgment, as a lawyer, approved the reference, that he explained the whole matter to Mrs. Powell, giving her full information as to what matters were to be submitted, the basis on which they were to be submitted, and to whom they were to be submitted, and that she not only did not complain of the reference, but fully approved it and gave her consent to it."

Pending this motion to set aside said award, and the order making it the judgment of the Court, the said Sarah A. Powell, by her trustee, James Edmondson, filed her bill in equity in Whitfield Superior Court, alleging: That she is a *feme couverte,* and wife of Jacob S. P. Powell; and that on the seventh day of March, 1849, General James D. Erwin, of Barnwell District, in the State of South Carolina, executed and delivered his certain deed, conveying to Peyton L. Wade thirty-three negro slaves, to wit: Andrew, the elder, and Andrew, the younger; Rosey Ann, Lewis, Anthony, Prince, Cain, Becky, two Henrys, Sam, Jane, Nelly, Joe, Albert, Peggy, Eliza, Susan, Nero, Molly, Joel, Nancy, Georgiann, Mary, Abby, Nelson, Emma, Rufus, Dick, Frank, Lavinia, Milzy and Lizzie, together with the future increase of said slaves, to be held by the said Peyton L. Wade in trust for the sole and separate and exclusive use of the complainant, for and during her natural life; the said slaves, nor their labor or hire, to be subject in any manner whatsoever to the debts, contracts or agreements of the said Jacob S. P. Powell, the husband of the complainant. That the said deed of trust also stipulated, that the said Jacob S. P. Powell should not exercise the slightest control, or take the slightest interest in the said negro slaves, and that, after the death of the complainant, the said negro slaves should be delivered to and become the absolute property of such child, or children, as the complainant shall leave at her death, share and share alike; which trust the said Peyton L. Wade then and there accepted. That about the same time the said Peyton L. Wade received from Robert Martin, of the city of Charleston, a bill of sale for the following negro slaves, to wit: Mingo, Delilah, Lovey, Sarah, Leah, Jeff, Henry, Barchell, Chesterfield, Julia, Cornelia, Reuben, Daniel and Sally, which negroes the said Martin had purchased, for the use and benefit of the complainant, on the first Monday in February, 1845, at a public sale thereof by the Commissioner in Equity, and turned over to

complainant on condition that she should pay the purchase money of said slaves out of the proceeds of her planting operations; that the amount due said Martin at the time of the execution of the deed of trust, as aforesaid, was about forty-seven hundred dollars; that the complainant reduced said sum by transfer of the place on which she then lived, and by cash payments, to the sum of thirty-one hundred dollars; that by an agreement between the complainant and the said Peyton L. Wade, the said Wade paid the sum of thirty-one hundred dollars to the said Martin, and took a bill of sale of said last mentioned negroes to himself and in his own name, to secure the repayment to him of the said sum of thirty-one hundred dollars. That on the 11th day of April, 1849, an agreement in writing was made and entered into, by and between the said Peyton L. Wade and the said Jacob S. P. Powell, in which it was recited "that the said Wade had purchased of the said Powell seven negro slaves, to wit: Dempsy, Henry, Bess and her three children, and Jim; and the said Wade had also purchased from Robert Martin, of Charleston, South Carolina, fifteen slaves, all of which were then the property of the said Wade." That said agreement stipulated that the said Jacob S. P. Powell should take the management of the said slaves and pay to said Wade the sum of fifty-eight hundred dollars by the first day of January, 1851, with the lawful interest thereon, from the first day of January, 1850; that, if said Powell should fail to pay the said principal and interest during his life, all of said negroes should be liable and subject to said Wade for any balance due him; that in the meantime the said Powell should have no liberty to sell or dispose of any one of said negroes without said Wade's express consent; that if any one else should, by contract with said Powell, control or attempt to control any of said negroes without Wade's consent, the said Wade should interpose his right in the premises, and that when all of said sum of money with the interest thereon should be fully paid, the said Wade should deed and settle all of said negroes, and their issue and increase, on such person or persons as the said Powell might name.

The bill further alleges: That at the time the said Wade paid to Martin the thirty-one hundred dollars aforesaid, the complainant, through said Powell, her husband, placed in said Wade's hands two promissory notes on James D. Erwin,

payable to the complainant, for five hundred dollars each, given in payment for a tract of land sold by complainant to said Erwin. That complainant, also through her said husband, turned over to said Wade fifty-nine bales of cotton, one thousand bushels corn, one hundred bushels of cow-peas, two four-horse wagons, six mules, one thousand pounds of bacon, five hundred pounds of lard, fifty-nine head of sheep, ninety-three head of hogs, two carriages, a large amount of plantation tools and a considerable quantity of other property, together with about twenty-four full working hands, all of which the said Wade kept, used, and worked for his own use and benefit during the year 1849, and (with the exception of four of the negroes) also during the year 1850, and some of said negroes since that time, for none of which said Wade has ever accounted to complainant. That said Wade had combined with the said Jacob S. P. Powell and one Jesse Wade, to cheat the complainant out of the proceeds and revenues of her estate, by settling and paying off with the complainant's funds the private indebtedness, pretended or real, of the said Jacob S. P. Powell and Jesse Wade to the said Peyton L. Wade. That the complainant had often called on the said Peyton L. Wade for an accounting and settlement, and was met only by propositions to discount and settle large claims, real or pretended, which the said Peyton L. Wade claimed to hold against the said Powell; that, abandoning all hope of a fair settlement with the said Peyton L. Wade, she filed a bill in chancery, in the Superior Court of Murray county, against the said Peyton L. Wade and Jacob S. P. Powell, and, also, a bill in equity, in the Superior Court of Whitfield county, against the said Jesse Wade, Peyton L. Wade, and Jacob S. P. Powell, calling on them for a full accounting and settlement to and with the complainant in the premises, and praying the appointment of a new trustee instead of the said Peyton L. Wade. That whilst these bills were pending, the said Peyton L. Wade and the solicitors of the complainant agreed to refer the matters in controversy in said bills to arbitration; that said agreement of reference was made without the knowledge, authority, approbation or consent of the complainant, and upon a basis unknown to complainant, and at variance with her wishes; that a rule or order of Whitfield Superior Court was had and passed, referring said cases according to the agreement, and that the

arbitration took place on the first day of September, 1857, after which orders were passed by the Judge, at chambers, confirming and carrying out the award made by the arbitrators; that said award was made only upon the separate matters between Peyton L. Wade and Jacob S. P. Powell, who were co-defendants in the said bills in equity, filed and exhibited by the complainant, and did not touch and settle the matters of said bills. That James Edmondson, being only the next friend of the complainant, had no sufficient right or authority to sign and agree to said submission and basis of reference; that said arbitrators passed upon matters outside of the submission, and awarded to themselves five hundred dollars each, whilst they were attorneys in the cases referred, at a stipulated fee of one thousand dollars each; that said arbitrators and umpire exceeded their authority by selling two or three of the complainant's negroes to said Wade, for the purpose of paying the fees of said arbitrators, and that, too, without the consent of complainant or her next friend, and before the award was declared. That said arbitrators and umpire transferred and delivered to the said Peyton L. Wade sixteen valuable slaves belonging to the complainant, and hereinbefore mentioned, to wit: Mingo, Dinah, Lovey, Sue, Jeff, Leny, Rachel, Delilah, Ben, Prince, July, Henry, James, Reuben, Daniel and little Jim, worth in all twelve thousand dollars or some other large sum of money, and passed over to said Peyton L. Wade by the said arbitrators and umpire to pay certain damages and accounts, pretended or real, which the said arbitrators found to be due by the said Jacob S. P. Powell to said Peyton L. Wade, which transfer was in violation of the terms and stipulations of the deed of gift made by the said James D. Erwin, as aforesaid, and which was appended to the said bills in equity referred as aforesaid; that said arbitrators proceeded to charge the said Peyton L. Wade with the price of the said negroes so transferred by the arbitrators as aforesaid, and for cotton, and for a large amount of stock and articles of various sorts, and passed the same all to the credit of the said account which the said Peyton L. Wade had prepared against the said Jacob S. P. Powell individually; that said arbitrators took no account of the sum due for the hire and labor of complainant's negroes, when used by said Peyton L. Wade, as hereinbefore charged and set forth; that the arbitrators allowed the said Peyton

L. Wade compound interest on all of his said accounts and demands which he had preferred against the said Jacob S. P. Powell, and allowed no interest at all upon the amounts estimated as due the complainant for the use, hire, and so forth, of her negroes, all of which will appear by reference to the submission, award, orders of Court, rule of reference, etc., which are made a part of complainant's bill; that no copy of said award was ever furnished to the complainant, or to her said next friend, or to the said Powell; that complainant's children, who are remaindermen of said estate, were unrepresented in said arbitration. That no award was ever made in accordance with the submission and rule of reference, but that the said award is a mere settlement of their own private and individual accounts, between the said Peyton L. Wade and said Powell, and a conversion of sixteen of the complainant's negroes to pay the private debts of said Powell; that the said award was placed on the Minutes of Murray and Whitfield Superior Courts, in vacation, on the 18th of September, 1857, of which complainant had no knowledge for several months, and that, so soon as complainant could do so, after ascertaining what had been done, she instituted motions in the Superior Courts of Whitfield and Murray counties, to set aside the said award, and the orders confirming the same; that said motions are now pending and undetermined.

The bill prays that the award may be set aside, annulled and vacated, together with all the orders of Court, or the Judge at chambers, confirming the same; that said Bills in Equity may be reinstated and stand as they were before the submission was made; that an injunction issue, restraining the said Wade and Powell from selling or carrying away any of said negroes, and from wasting or disposing of any of the funds or property of complainant's said trust estate; that the defendants, Peyton L. Wade and Jacob S. P. Powell, answer the bill; and for general relief.

To this bill there was a demurrer filed for want of Equity.

The presiding Judge overruled the demurrer, and that decision is the error complained of in this case.

WARREN AKIN and T. R. R. COBB, for plaintiff in error.

A. R. WRIGHT and JACOB S. P. POWELL, for defendant in error.

Wade vs. Powell.

*By the Court.*—LYON, J., delivering the opinion.

James D. Erwin, the father of Mrs. Sarah Powell, the complainant in this Bill, on the first day of March, 1849, conveyed to the defendant in the Bill, in trust for Mrs. Sarah Powell and the wife of Jacob S. P. Powell, thirty negroes. The defendant accepted the trust and entered upon the performance of its duties. Subsequently, and on the 7th day of March, 1849, Jacob S. P. Powell conveyed to the defendant, Wade, seven negroes, in consideration of $2,000; afterwards, and about the last of March, 1849, one Robert Martin conveyed to defendant fifteen negroes, in consideration of $3,100 paid him by defendant therefor. These fifteen negroes had been, previously, the property of Jacob S. P. Powell, but had been sold at Sheriff's sale, as the property of Powell, and bid off by Martin. This $3,100, paid by defendant for the negroes, seems to have been the amount that Martin had paid for the negroes at Sheriff's sale, and defendant advanced him the money and took the title to the negroes, for the benefit of Powell, so that Powell was to have the negroes when this advance was reimbursed, by him, to Wade. On the 11th April, 1849, the defendant, Wade, entered into an agreement with Jacob S. P. Powell, in respect to these two last lots of negroes, in which the purchase of them by Wade is recited, and Wade agrees to let Powell take possession and have the use of the negroes, he paying interest on the amount then due by him to Wade, which is stated at $5,800; and whenever all that amount, principal and interest, should be paid, the defendant agreed to deed and settle all of said negroes and their issue and increase, as the said Jacob S. P. Powell should name. Now, it will be observed, up to this time, that the complainant had no title, or claim, either equitable or otherwise, to these negroes, or any part thereof; but, so far as they were concerned, and the rights and debts growing out of the several advances, conveyances and agreement, were all between the defendant Wade and Jacob S. P. Powell. The negroes of Mrs. Powell, mentioned in her father's deed for her use, were not involved in any of these transactions, advances or liabilities.

In January, 1851, defendant and Powell make a new arrangement, in respect to those negroes embraced in the agreement of the 11th of April, 1849, by which that agreement

was cancelled, and defendant took eleven of the negroes and allowed Powell credit for them, at a price agreed upon between the parties.    At that time there appears to have been a full settlement between them, of all matters, Wade allowing Powell credit for all that he had received from him, in every form or shape, and charging him with all advances on account of these negroes, advances made for support of family, purchases made for them, etc., and debts due by Powell to him otherwise; and after deducting from such balance, found then to be due by Powell to Wade, the price agreed upon for the eleven negroes, there was left still a balance due to Wade, the defendant, of $3,698.    As to his balance, and the remaining negroes, Powell and Wade agree, that Powell have the thirteen negroes remaining, stating their names, and if he pays the said sum of $3,698, then due to Wade, at the times agreed on in the written agreement, that the said negroes shall be Sarah A. Powell's; and if he fails to make any of the payments, Wade to collect the whole amount out of the negroes.    This is the first time the name of the complainant is mentioned in connection with these negroes.    As to the negroes retained by Wade in that settlement, she never did have any connection with, in any way whatever, and, therefore, she could not call on the defendant to account as to them, or their hire, and her whole claim or interest in the remaining twelve depended wholly upon the payment to the defendant of the amount due on the negroes of $3,698; without the payment of that sum, she had no title to the negroes.

On the 4th of November, 1851, the defendant enters into a new agreement, and this time the agreement is directly with the complainant, and Jacob S. P. Powell is a witness, in which it is stated that Wade, the defendant, owns the thirteen negroes mentioned in the last agreement, and he agrees that complainant may work them with the trust negroes (those she derived from her father), by paying to defendant $500 on the 1st of January, 1852, and $2,700 in five annual installments, the interest to be paid annually—in all $3,200—and if the said Sarah A. Powell paid said amounts, then the negroes to be hers, as the rest of her property is; if she does not, then the agreement to be null and void, and defendant at liberty to make his money out of the negroes.

The parties subsequently, on the 7th of February, 1853,

agreed, that Wade would take a tract or settlement of land, in payment of the balance, provided it was delivered to him by the 1st of January, 1854. This was not done, but the land was sold before the time to some one else, and the debt due to Wade on the negroes remained as it was stated in the agreement of the 4th of November, 1851. In addition to this debt, defendant accepted and paid a draft drawn for the benefit of the trust for $1,012.64. He also bought a note on Jacob S. P. Powell for about $2,000, for the sum of $400. These are the state of accounts and dealing between the parties as expressed by their several written agreements, as well as I can state them, at the time the litigation commenced between them. The whole of which, in detail, commencing at the beginning and coming down to the litigation, including all the different suits between the parties and the subject involved, were referred to arbitration "in order to settle the cases and all matters in dispute between the parties," which agreement was made *"as the basis of a compromise of disputes, for the putting an end to litigation."* And to effect this very desirable object, the defendant waived, for that purpose, all past settlements, brought back all the negroes that he had bought from Powell, and put them into the possession of the arbitrators. The arbitrators selected an umpire, went into an investigation, agreed upon an award, reported it to the Court, and it was made the Judgment of the Court. The complainant filed this Bill to review that award and judgment, and reverse and vacate it on various grounds of alleged error, which I will take up and dispose of in the order they are stated in the bill. Before considering the grounds of error, stated in the bill, I will notice a ground of error that does not appear in the Reporter's statement:

1. The defendant plead the award specially in bar of the complainant's right to relief. That is, that the award so made was not the subject of review by this Court. The Court below, on demurrer to that plea, overruled it; to which defendant excepted. We are clear, that the award and judgment made in this case on this agreement and rule of reference is not the subject of review, unless for fraud, which is not charged in this bill, for the reason that the tribunal that made this judgment or award, was of the appointment of the parties to whom they had referred all matters between themselves, to be determined and settled according to their understanding

of what is right and proper between the litigants. Such a judgment, so made, a Court of Equity has no power to review and correct its errors, if there be any, for the parties have agreed to abide by it. But as it was not necessary to put our judgment in this case on that ground, we did not do so.

2. The first ground of alleged error is, "that the defendant and the Solicitors of the defendant agreed to and did make the reference, without the knowledge, authority, approbation or consent of complainant, and upon a basis unknown to her and at variance with her wishes." This is the charge, and, for the purpose of this motion, must be considered as true, although it is denied by a portion of her Solicitors in the most emphatic terms; and we must say that the charge is a most extraordinary one, when it is understood that some of the negroes were taken from her possession and carried to the place where the arbitration was had, for that purpose only, and her husband and, I believe, her son, then at the arbitration as witnesses, and not one word heard at that time by way of objection from her. Be that as it may, we hold that, taking the charge as true, the fact is not such error as will avoid the judgment or award. It is within the scope of a Solicitor's or Attorney's power and duties to refer the matters in dispute or involved in litigation, which have been confided to their skill and management by their client, to referees or arbitrators, under the sanction and approval of the Court, for adjustment or arbitration, without the consent of his client. *Watson on Awards,* 49. *Caldwell on Awards,* 29 to 33. *Kidd on Awards,* 45 and 46. 1 *Dall.* 642. *McCord Ch. R.* 406. *Billing on Awards,* 52. *Filmer vs. Delmer, 3d Taunton,* 486. And why should not this be so? An Attorney may confess a judgment against his client, and this involves everything.

3. The next error alleged is, that the award was only made upon the separate matters between her husband and the defendant, and did not touch the matters involved in the bill she had filed. This might be so, and no error, for the bill does not show how that fact prejudiced her rights. But it is not so, as the award itself shows. If the defendant had a right or interest that was not fully considered and settled by this award, and most favorably for the complainant, as I shall endeavor to show in the conclusion, we have been unable to find it, and the complainant has not thought proper to point it out.

4. A third error charged is, that James Edmondson was only a next friend, and had no sufficient right or authority to sign and agree to said submission and basis of reference. That he did not sign it was not error, but strengthens the act of the Attorneys and Solicitors. The joining of the two, we think, made the agreement perfect. We think it a little strange that the complainant should make the violation of his duty and her right, by the next friend, as a ground for setting aside the award; and, to do so, makes her appeal through the same person as next friend. If he committed such gross breach of faith and duty to her, she ought to have withdrawn her confidence.

5. A fourth ground of error is, that the arbitrators exceeded their powers under the rule of reference, by settling their own fees. If this was a good ground, it could only be to that extent—not to vacate the whole award. We do not think it is error. The Statute of the State, providing for these arbitrations, gives to the arbitrators power to settle their fees; and, although this reference was not made under that Statute, we think it a good rule, and ought to be adopted and enforced by the Courts in arbitrations like this, outside of that Statute, as the sense of the law on that subject.

6. The next grounds of error are, that the arbitrators transferred sixteen of her slaves to defendant to pay certain damages or accounts, pretended or real, which the arbitrators found to be due and owing by her husband, Jacob S. P. Powell, individually, to the said defendant, and the same was in violation of the terms in which said negroes, vested in her, that they should not be made subject to the debts of her husband. In making this charge, the complainant gives the names of the negroes and the title under which she holds them, referring to the agreements between the defendant and her husband, and herself, which I have heretofore stated, and making the exhibits a part of the charge. Take the whole charge together and it disproves itself. Not one of the negroes so transferred was the property of the complainant, nor subject to the trust or restrictions contained in the deed from James D. Erwin, her father, to her. On the contrary, the legal title to every one of these negroes was actually in the defendant, and was to continue in him until all the advances made by him for the negroes of principal and interest, were fully paid off, and in case it was not, that he should

make the money out of the negroes; so that the arbitrators, instead of taking her negroes, only transferred to and vested in the defendant his own negroes, and at prices that were never contemplated when these agreements were made. There was no error in this.

Another ground of error is, that no account was taken by the arbitrators, in the award, of the hire and labor of the negroes of complainant when used by defendant. It would be a sufficient answer to this ground that the bill of review does not state that it was made to appear to the arbitrators that anything was due to complainant on this account. But we do not choose to meet it in that way. The award shows on its face that credit was given for every dollar of hire due by the defendant, and in such a way that complainant got the benefit of it to her separate use.

7. The next ground is, that the arbitrators allowed to defendant compound interest; how, the bill does not show; but the award shows that the rule of computing interest, adopted by the arbitrators, was that prescribed by Statute—that is, to calculate interest on the principal up to the time a credit is allowed; and if the credit exceeds the interest due up to that time, to add principal and interest together, deduct the credit from the sum total, and add interest on the balance to the next credit, etc., but when the interest exceeds the credit, the sums were not added, but the interest continued on the balance, until a credit was reached that did exceed all interest, and then addition and deduction were made. This we understand to be the rule of computing interest under the Statute, but this the complainant calls compounding.

8. The next ground of alleged error is, that no copy of the award was furnished to the complainant, or her next friend, as was required by the arbitration act of 1856. To this we reply, that the award was not made under or in accordance with that Act, and is not necessarily to be governed by its provisions, especially in immaterial matters like that.

9. Another ground of error is, that the children of complainant, who are remaindermen in said deed, were not made parties to said award. If they have any interest requiring representation in the matters in controversy, we have not been able to see it.

10. The next and last ground of alleged error is, that the arbitrators examined the defendant and her husband as wit-

nessess in said investigations. We see no error in this. Besides, complainant does not show that either of them testified to any fact that was untrue or prejudicial to her interest.

11. We have thus gone over the whole of the alleged errors, and find that the arbitrators, even judging all their acts by the rules of law, as we would that of a Court, and there has been no error committed that could authorize this Court to review and reverse that judgment. But, looking at the case outside of the strict rules of law, and outside of the necessity and importance of avoiding the mass of litigations that this award effects, and solely with reference to the interests of the complainant, ought this settlement of the controversy to be disturbed? When the defendant accepted the trust, complainant had nothing but the thirty negroes; he has received nothing from her, or her separate property, from that time until the present, except the use of a few of the negroes included in her father's deed, during the years 1849 and 1850, and nothing from any other source, except some $304 from her husband, which was passed at once to his credit. The defendant, in the meantime, advanced, out of his own means, largely for the support of the family of the complainant; bought and furnished in the same way, with his own means, and when the said Powell owed him largely, for a settlement of land for which he paid some $2,500; furnished them with everything in the way of supplies for stocking and carrying on a farm—all of which complainant has now to her separate use; and, in addition to all this, she gets by the settlement some seven or eight negroes added to her separate estate, all growing out of the advances made by defendant, and which he lay out of year after year, paying hire on the negroes for which he held the title, and which he had bought and paid for. And all the defendant gets in the return is simple interest on the advancement. The complainant's separate estate has been largely benefited, and the defendant gets nothing.

Take another view. Suppose we should vacate the award and send the parties back to settle their rights in the Courts, what would be the result? The title of defendant to the eleven negroes, that he took absolutely from Powell in January, 1851, would be obliged to be sustained: there can not be a shadow of pretence for setting it aside. Mrs. Powell had not the slightest interest in them nor never had, and as to Powell,

there could be no excuse for setting it aside by him.   Then the charge of the $3,200, which was admitted to be due by complainant on 1st January, 1852, on the other thirteen negroes, with interest, would necessarily have to be paid out of them, together with the $1,012, paid by defendant since for this trust.   When these charges should be paid out of the thirteen, how many of them would be left?  Instead of getting seven or eight, as she has, in all probability she would have fallen in debt.   Instead of being injured by this award, the complainant has been largely benefited.   She is the last person to apply to the Court to set it aside.   There was no error, and the judgment of the Court below, overruling the demurrer, must be reversed and the bill dismissed.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed; upon the ground that the Court erred in overruling the demurrer to the plaintiff's bill.  The Court should have sustained the demurrer, and dismissed the bill.