## WILLIAMS vs. SIMMONS. *

1. The counsel of record representing married women in pending litigation, have as ample power to bind their clients in conducting and disposing of such litigation, as have the counsel of other suitors. And decrees rendered with consent of counsel, without fraud, are obligatory upon their clients, the consent of counsel being in law the consent of the parties they represent.
2. Where a final decree is by its terms founded on consent, if the alleged consent was wanting for lack of mental concurrence by one of the parties, such party is not at liberty to gainsay the record and raise that question collaterally, but must seek to have the decree opened by a direct proceeding for the purpose. And the time for commencing the proceeding is limited to three years.
3. It is not contrary to law or equity for a wife's land to be sold by decree for the payment of part of its own purchase money, though the debt for such part be legally that of the husband, he having made the purchase as her agent and given his own note with the understanding that the land was to be bound, and title having been retained in the vendor accordingly.

January 16, 1888.

---

*SIMMONS, J., being disqualified, did not preside in this case.

Attorney and Client. Married Women. Decrees. Parties. Statute of Limitations. Husband and Wife. Principal and Agent. Before Judge BOYNTON. Monroe Superior Court. February Term, 1887.

.Reported in the decision.

A. M. SPEER; J. A. HUNT, for plaintiff in error.

ROBT. L. BERNER; JOHN I. HALL, for defendant.

BLECKLEY, Chief Justice.

Certain land was levied upon as the property of Williams by virtue of a *fi. fa.* against him in favor of Simmons; and Mrs. Williams filed her bill, claiming the land as hers, and praying, besides other relief, for an injunction to prevent the contemplated sale. A temporary restraining order was granted, but the injunction being afterwards denied, and the restraining order vacated, Mrs. Williams interposed a claim to the land at law, and the bill and the claim were pending in the superior court at the same time. Both cases were tried together at August term, 1880, when a verdict was rendered by the jury, and the same was adopted and declared as the decree of the court. The verdict was as follows:

" We, the jury, by agreement of the parties, [find] that the judgment and *fi. fa.* issued thereon in favor of T. J. Simmons *vs.* A. J. Williams is a good and valid lien upon the lands which have been _evied on, superior to all liens, being for the purchase money of said lands; that said lands are subject to said execution; that the sum of seven hundred and fifty dollars of said *fi. fa.* is to be paid on the first day of December, 1880, and the balance of said *fi. fa.* to be paid on the first day of October, 1881; that on failure to pay the said seven hundred and fifty dollars on the first of December, 1880, said *fi. fa.* proceed for the whole amount of said *fi. fa.* against the lands levied upon; that, upon the payment of the whole amount of said *fi. fa.*, James M. Hollis be required to make and execute good and sufficient legal title to the lands described in the deed now of file, to Mrs. Rachel S. Williams, and that the deed now of file be cancelled, said deed having been made on the 24th day of November, 1875, by J-

M. Hollis to A. J. Williams, and therein conveying one hundred and twenty-five acres of land in Kelsey's district of Monroe county, bounded north by Thomaston road, east by lands of Roger Hart, south by lands of Smith Waller, and west by lands of Jefferson Hart, and registered in the clerk's office of Monroe county on November 8th, 1879, and to be of no binding effect, and that the claim case between said parties be dismissed, and that complainant in this bill pay the cost of this bill.''

Then follows the decree adopting the verdict.

The bill alleged, amongst other things, that Mrs. Williams had purchased the land from Hollis, taken his bond for titles and paid most of the purchase money. One of its averments was as follows :

"Oratrix alleges she is prepared and desirous of paying balance of purchase money due on said land to the person legally entitled to receive the same, whenever the same is ascertained, and whenever the party can and will execute to oratrix a legal warrantee deed to said land. She is now anxious to pay the balance due and secure her title according to the contract."

The time fixed by the decree for paying the first instalment having passed, the land was again advertised for sale, in accordance with the terms of the decree, when Mrs. Williams tendered to the sheriff another claim affidavit and bond, which he rejected, and proceeded to sell. The sale was made and Simmons became the purchaser, to whom the sheriff executed a deed, after which Mrs. Williams, in March, 1881, filed a bill against the sheriff to restrain him by injunction from turning her out of possession and putting the purchaser in. In that bill her complaint was that the sheriff had rejected her claim. She made no attack on the decree. The injunction was denied, and the sheriff proceeded to put Simmons in possession. She then applied to the ordinary to have the land set apart to her as a homestead; and in October, 1881, Simmons filed a bill against her and her husband, in which all these proceedings were recited and various matters alleged ; and the bill prayed for general relief, and specially as follows:

" That the said A. J. Williams and Rachel S. Williams be perpetually enjoined from taking out a homestead in said lands, and that

the ordinary be restrained from granting the same; and said defendants be restrained from further interference with said land in any shape whatever, by claim, bill or otherwise; and ·that they be restrained and enjoined from further circulating their false and malicious reports and statements concerning said lands, or from otherwise placing a cloud upon orator's title to the same. Second, to grant unto your orator the State's writ of injunction, restraining the said defendants from further proceeding with their homestead application or further interference with said land, or the court of ordinary from granting said homestead, under a penalty to be fixed by your honor."

A preliminary injunction was granted on October 22, 1881, as prayed for, until further hearing, which injunction is still of force.

In November, 1881, the defendants, Mr. and Mrs. Williams, filed their first answer, in which all they stated touching the decree was as follows:

" And further, it is true that a decree was obtained at the time alleged, in said court, to make R. S. Williams' land subject to said note, but said decree was obtained without the knowledge or consent or desire of said defendant, R. S. Williams, but rather against her expressed wishes and instructions, which was contrary to equity and justice; and under said decree, the sheriff of said county of Monroe exposed her said land for sale on the 1st Tuesday of March, 1881, and afterwards, on the 5th day of October, 1881, ejected said defendant, Rachel S. Williams, therefrom, rendering her and her little children houseless and homeless, notwithstanding she had filed her claim in terms of the law."

Several amendments to the answer by Mrs. Williams appear in the record, none of them dated earlier than February term, 1887. These take the shape of cross-bills and pray to vacate the decree and set it aside. The averments concerning it are as follows:

" The respondent denies that any decree was ever taken settling her rights under said bill or under said claim. This defendant is informed that [what] purports to have been a consent decree was taken in said cause, was taken and entered on the minutes of the court at the August term, 1880. To this decree the defendant denies that she ever assented, or authorized any one else to assent for her, but that, on the contrary, as soon as she learned of it, she expressly dissented to it, and at once put counsel for complainant or notice that she would not recognize said decree as being in any manner

binding on her. This decree this defendant says is utterly void: 1st. Because it was entered without the knowledge or consent of this defendant; and 2nd, because it is unauthorized by any pleadings in said cause. It is true that W. D. Stone, Esq., was counsel for this defendant in filing the claim and the bill under which it is claimed said decree was entered, or is claimed to have been entered, but defendant denies that the said W. D. Stone represented her for any other purpose than that plainly and distinctly set forth in the pleadings, and that any agreement attempted to be entered into for any other purpose is not in any way binding on this defendant; and defendant therefore submits that the said decree is absolutely void and of no effect. This defendant here distinctly alleges that counsel for the said T. J. Simmons were fully aware, at the time said pretended decree was entered at the August term, 1880, that the same was without her knowledge or consent, and that the sale of said tract of land by the sheriff and the refusal to accept the claim tendered by this defendant on the day of the sale, was the result of fraudulent confederation and collusion between the said sheriff and counsel for complainant, to defeat this deponent of his right to have said matter adjudicated by the proper tribunals."

1. These are all the allegations in the amended answers affecting the decree, and as we construe them, they amount simply to this: that Mrs. Williams did not give her personal assent to that decree, and she contends that her counsel had no authority to represent her further than to deal with the matters appearing upon the face of the papers. She does not intimate that he was not retained as counsel for these causes in her behalf, or that his powers were more limited than the general powers which appertain to the position of counsel. Moreover, she does not allege any fraud on the part of her counsel or any collusion with him. She avers that the counsel for the opposite party knew that she did not consent to the decree, and that they afterwards, by collusion with the sheriff, procured the sale to be made over her second claim which the sheriff rejected; but we do not understand her to be charging any fraudulent collusion between the two sets of counsel to bring about this decree; and testing the matter by what she says of her own counsel's right to represent her to the extent of what is set forth in the pleadings, we find that there was

enough set forth in the pleadings to justify him if he thought it for her interest to consent to the decree. The decree dealt with matters that she presented in her bill, and disposed of them. She offered to pay the balance of the purchase money; the decree settled what that was, and gave her time to make the payments; so that in any view of it, we do not see that her counsel transcended the ordinary powers of counsel in giving his consent for the decree to be entered.

There seems to be an opinion, which makes its appearance in records very frequently, that married women are privileged suitors; that when they come before the courts, they come with a sort of shield against being bound in favor of their adversaries, and with the right to bind them in all matters whatsoever. Now this is a grave mistake. When a suitor comes into court, competent to select counsel, and does select counsel, no matter who the suitor may be, or how much married, the counsel is there for the purpose of representing the client, and whatever the counsel assents to, the client assents to. There is full power on the part of the counsel to represent the client, and it is just the same as if the client were there in person ; and it is no answer to a decree, a solemn judgment of a court, for the client to come in and say that the counsel misrepresented the client's interests, or did not represent the client's wishes. Let the client see that the counsel conforms to instructions, and if there is any injury by failure to do it, let the counsel answer for it, and not the other party. In this case, whatever gain was to this lady as against her adversary, was absolutely secured by the decree. The decree was carried into effect, and she interposed nothing whatever in the way of an attack upon it, but merely presented a claim, after the advertisement had run or was running, and because the sheriff disregarded her claim, she having had one claim and it being disposed of by decree, she then files a bill against the sheriff after the sale was effected, and tries to prevent him from putting

the purchaser in possession; and in that bill she makes no attack upon the decree, says nothing about it or against it in any way, and finally, when a bill is brought against her, she makes an answer to it and says nothing about having the decree set aside, does not use her answer as a cross-bill, makes no prayer to vacate the decree, but afterwards, when the case has been pending for years, from 1881, the time her first answer was filed, to 1887, she comes, by amendment to her answer, with a cross-bill, attacks the decree in this feeble way, and prays that it be opened and set aside. Now, this much would not be done for any other suitor; there is no *man* who could avoid a decree for such cause as she sets up; then why should this lady be indulged in so doing? We dare not decide a question of right by a rule of courtesy, or substitute deference to sex for deference to law.

The counsel of record representing married women in pending litigation, have as ample power to bind their clients in conducting and disposing of such litigation, as have the counsel of other suitors. And decrees rendered with consent of counsel, without fraud, are obligatory upon their clients, the consent of counsel being in law the consent of the parties they represent.

A case very much in point is *Lewis vs. Gunn*, 63 *Ga.* 542; other relevant cases are *Mashburn vs. Gouge*, 61 *Ga.* 512; *Glover vs Moore*, 60 *Ga.* 189; *Wingfield vs. Rhea*, 73 *Ga.* 477. As to the powers of counsel, see *Wade vs. Powell*, 31 *Ga.* 1; *Lyon vs. Williams*, 42 *Ga.* 168.

2. The cross-bill was demurred to, and the demurrer was sustained, partly no doubt for the reason that the matter set up was insufficient, and partly upon the ground that it came too late. The three years allowed for reviewing the decree, or for granting a new trial, had passed, and of course, there being no warning by any proceeding that she meant to resort to any means of getting rid of the decree, the purpose of the statute in limiting such applications to three years' time would be defeated. The object

of the limitation, no doubt, is to put parties on notice, so that they may secure and preserve the evidence to uphold the decree, if evidence be needed. Here she denies that she consented. Suppose that denial now in controversy, it may be that the counsel who represented her is dead or removed,—we know not; or it may be that the evidence by which her consent could be established, has been lost by delay to give notice of her intention to make this attack upon the decree. There is the same reason for not allowing the attack to be brought in by way of addition or amendment to the answer, as there is for not allowing it to be begun as an original proceeding.

It was contended that these amendments converting the answer into a cross-bill, would relate back to the time of filing the original answer. We think not; because here is a matter brought in against which time was running. If she had a cause of action for setting aside this decree, she did not sue on it within the time limited. It is like bring ing in a set-off in an action at law by amendment to the plea or answer, when time has run pending the action sufficient to bar the set-off.

When a final decree is by its terms founded on consent, if the alleged consent was wanting for lack of mental concurrence by one of the parties, such party is not at liberty to gainsay the record, and raise that question collaterally, but must seek to have the decree opened by a direct proceeding for the purpose. And the time for commencing the proceeding is limited to three years. Code, §§2914 (a), 2919.

Now it may be somewhat doubtful whether this decree could be dealt with by a mere answer operating as a cross-bill, when one of the parties to the decree was not before the court. Hollis, the man who sold the land and made the bond for titles, was a party to the decree, but he is not a party to the present bill or the cross-bill; but that could have been supplied if the other conditions had been present. He might have been made a party.

3. It is not contrary to law or equity for a wife's land to be sold by decree for the payment of part of its own purchase money, though the debt for such part be legally that of the husband, he having made the purchase as her agent, and given his own note with the understanding that the land was to be bound, and title having been retained in the vendor accordingly.

If the whole matter was open again, and we went back to the claim and bill, there would not be any inequity or anything contrary to law in requiring this land to respond for its purchase money. The original purchase was made by the husband for the wife, and the bond for titles taken in the wife's name. There was a payment in cash, and a note given for the balance. There is some doubt as to how that note was made, whether made by the husband as agent for the wife, with the intention of binding the wife. But it was renewed by him personally, but with the understanding expressly, as appears in the answers to that bill, that the land was to remain subject to the purchase money, and it was in fact Mrs. Williams' debt. At bottom it was her debt, and there was no intention of receiving her husband's note in payment of it in the sense of discharging the debt, or of releasing the land as security for its payment. The new note was taken, but it was with the understanding that the land remained bound; so that if we went back and reopened this litigation, and returned to the facts that the lady relies upon, there would be nothing inequitable in holding the land still bound for the unpaid purchase money, with one exception. There was some stipulation for increased interest. That may have made a difference to that extent; but no stress was put upon it in the argument of the case, and there has been no separate point made as to that feature in any stage of the proceedings that we are aware of. The only doubt that could possibly arise would be in regard to the increased rate of interest.

Judgment affirmed.