70926. HOLCOMB v. EVANS.
(337 SE2d 435)

BEASLEY, Judge.

Plaintiff-appellee Evans and defendant-appellant Holcomb entered into a written personal service contract whereby plaintiff's band was to play at defendant's club, Dudley's, on October 18 through 22 and 25 through 28, 1983. Plaintiff was to receive $4,000 for the performances, $2,000 at the end of each period. The contract provided: "This agreement cannot be cancelled by either party without the consent and authorization of the other party. In the event Employer cancels without the authorization of Artist, the full amount of wages

shall immediately become due Artist."

The musician filed the present action seeking $4,000 plus costs and attorney fees, alleging the employer unilaterally cancelled the agreement.

After a bench trial, the court made the following findings of fact: "[P]laintiff appeared at Dudley's for the purpose of performing the contract in accordance with the terms thereof and at the time the plaintiff tendered performance of the contract to the Manager and Manager Trainee of the defendant at Dudley's, who I find were agents and employees of the defendant . . . [D]efendant on October 17, 1983 hired a person different from plaintiff to provide entertainment services at Dudley's for the period from October 18, 1983 through October 22, 1983. [O]n October 18, 1983, when plaintiff appeared at Dudley's for the purpose of performing his contract, there was another performer's equipment on stage and the Manager and Manager Trainee of Dudley's, who were agents and employees of the defendant, would not allow the plaintiff to set up his equipment and perform, and informed the plaintiff that he would not be allowed to perform and that the plaintiff's performance and the contract between the plaintiff and the defendant was cancelled . . ." The court concluded that defendant's manager and manager-trainee had the apparent authority to act and speak on defendant's behalf and that defendant, acting through his authorized agents, unilaterally breached the contract between the parties. In consequence, the court awarded plaintiff $4,000 damages plus interest, $103 collection costs, and 15% of the principal and interest awarded for attorney fees.

1. The employer asserts the trial court erred in finding that his manager and manager-trainee had apparent authority.

"Findings of fact made by a trial court in non-jury cases are given the same weight as a verdict in jury cases, and will not be set aside on appeal unless they are shown to be clearly erroneous or wholly unsupported by the evidence." *Hanna Creative Enterprises v. Alterman Foods,* 156 Ga. App. 376 (1) (274 SE2d 761) (1980).

"If a person imposes upon another the duties and responsibilities involving the management and control of a matter of business, the agent will be presumed to have authority to represent his employer in any matter within the scope of his apparent authority." *Fireman's Fund Ins. Co. v. Davis,* 42 Ga. App. 49, 60 (155 SE 105) (1930). " 'Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.' '. . . Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act

done on his behalf by the person purporting to act for him.' [Cits.]" *Arrington & Blount Ford v. Jinks*, 154 Ga. App. 785 (1) (270 SE2d 27) (1980). "Further, an estoppel arises as against the denial of agency when a principal places a purported agent in a position of apparent authority so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act and deals with the agent upon that assumption. (Cits.)" *Jester v. Hill*, 161 Ga. App. 778, 781 (1) (288 SE2d 870) (1982). " 'Authority to an agent to do a thing generally includes authority to do everything usual and necessary for the accomplishment of the main object. . . .' " *Arrington & Blount Ford*, supra, 154 Ga. App. at 787. These cases construe and apply the principles of law codified in OCGA §§ 10-6-50 and 10-6-51.

The evidence reflects that on October 18 the artist, along with his band, went to employer's club to set up their equipment and noticed that there was a disc jockey's equipment already on stage preventing them from setting up. The artist requested to see the employer but was told he was not in. The artist then asked to see the manager and was approached by the manager-trainee. The manager-trainee informed him the club had discontinued live entertainment and that he could not allow the band to play. He said "he was sorry but he was just acting under instructions. So, it wasn't his decision . . . It was upper management or a higher level decision than his . . . He was just going through the motions of doing his job." Employer's wife, the club manager at the time, told the artist that they had called him to cancel the contract. Prior to this date, the artist had received a message from a friend taking his calls that someone from employer's club had called to cancel the contract due to remodeling. The employer himself testified at trial that he had left a message for the artist that if he could not reach the artist he would have to cancel the contract.

The trial court could find that it was reasonable for the artist to believe the manager and manager-trainee were acting and speaking on the employer's behalf in cancelling the contract, particularly in view of the prior telephone messages he had received and the presence of disc jockey equipment on stage. Although the artist was told by the manager and trainee to call the employer, he was not told that he should do so because they lacked the actual authority to cancel the performances. It appeared instead that this was for the purpose of putting the plaintiff off in order to avoid further confrontation with club employees.

Contrary to the employer's position, it is irrelevant whether the manager and manager-trainee had *actual* authority to cancel the contract and that the contract by its terms could not legally be broken unilaterally. What is controlling here is whether the employer's man-

ager and manager-trainee had *apparent* authority. They were the ones left by defendant to remain at the establishment at the time plaintiff was to appear and perform. The employer cannot escape by not being present at the appointed hour and then denying that those left in charge did not have authority to act in connection with that performance.

Upon a review of the evidence, we cannot conclude that the trial court's finding of apparent authority was wholly unsupported or clearly erroneous. Accord *Custom Radio Wholesalers v. Hamilton/ Avnet Electronics*, 147 Ga. App. 110 (248 SE2d 187) (1978).

2. The employer asserts that the trial court erred in finding that, acting through his agents, he unilaterally breached the contract.

Because the trial court did not err in finding employer's manager and manager-trainee acted with apparent authority in prohibiting the artist from complying with the contract, the court did not err in finding employer liable, under principles of agency, for breach of contract. The employer created a situation in which it was impossible for plaintiff to perform as agreed. He was prevented from setting up and performing. Someone else's equipment was in place. A message had been left indicating the employer's intention. All of this was confirmed by the absence of any contact thereafter inquiring why plaintiff did not perform as agreed, and no demand for performance was ever made. *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599, 601 (2) (300 SE2d 139) (1983).

3. The employer lastly contends that the court erred in awarding attorney fees because the artist failed to comply with the notice requirement of OCGA § 13-1-11.

We need not address whether the notice requirements were met because OCGA § 13-1-11 is not drawn into operation. As explained in *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162, 166 (4) (332 SE2d 920) (1985), "this contract in which appellee agreed to perform services for appellants and appellants agreed to compensate appellee for those services, is not a 'note or other evidence of indebtedness,' and [therefore] OCGA § 13-1-11 is inapplicable to this case . . . [A]ppellee was under no duty to notify appellants of its intention to seek attorney fees under the contract." Employer's enumeration is without merit.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 30, 1985.

*Ira S. Zuckerman*, for appellant.
*V. Jane Reed, Lawrence J. Hogan*, for appellee.