A92A0803. ADDLEY et al. v. BEIZER et al.
(423 SE2d 398)

BIRDSONG, Presiding Judge.

Appellants Bill Strange and Rick Addley, respectively president and secretary of Pure Sports, Inc. (PSI), appeal from a jury verdict and judgment holding them liable for a $30,000 obligation of PSI, based on a letter agreement made by PSI's attorney, which gave the personal guarantee of Mr. Strange and Mr. Addley for PSI's settlement debt to appellees Steve Beizer and Steve Beizer Sports, Inc. Appellees asserted that PSI's attorney Mr. Meier was the agent, i.e., the attorney, for Mr. Strange and Mr. Addley; and that under Georgia law established in *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) as to apparent authority of attorneys, Meier's agreement as to appellants' personal guarantee is enforceable.

PSI was affiliated with Lotus Cars U.S.A., Inc. and sponsored Lotus cars in the 1990 racing season. By agreement with PSI, appellees were to provide pit crew service and transport the Lotus cars to racing events. The controversy underlying this debt arose in June 1990, when PSI informed Steve Beizer that it was dissatisfied with his facilities in Conyers, Georgia, and wanted the operation moved to Lotus facilities. PSI contended it paid all monies owing to Beizer, but Beizer refused to return the cars and demanded $37,000. PSI retained Meier to negotiate the return of the cars. Addley testified he learned from

Meier that Beizer wanted his personal guarantee but that he did not agree to give it.

PSI's attorney Meier sent a letter to appellees' attorney on June 8, 1990, saying: "I am writing to confirm the following settlement among Pure Sports, Inc. (party of the first part), Steve Beizer and Steve Beizer Sports, Inc. (parties of the second part). The parties to the settlement agree that: (1) The party of the first part agrees to immediately pay [$7,000]. (2) The party of the first part agrees to pay the parties of the second part [$7,500] on July 1, 1990, August 1, 1990, September 1, 1990, and October 1, 1990. (3) The monetary obligations of the party of the first part as expressed herein shall be personally guaranteed by Messrs. Addley and Strange. . . . (7) The parties to this agreement shall execute a mutual release of all claims and a compromise settlement agreement . . . subject to complete performance of the above terms. . . . Sincerely, [signed] William C. Meier."

Appellees returned the cars and received $7,000 in a matter of days after their attorney countersigned this letter. The four payments of $7,500 were not forthcoming, and this suit was filed against PSI and against Strange and Addley to enforce their personal guarantee. Strange and Addley defended by stating that Meier was not their attorney and did not have authority to bind them to a personal guarantee.

As evidence that he was agent for Strange and Addley, in addition to Meier's letter, appellees also point to Mr. Beizer's testimony that he spoke to Addley and Addley "agreed to the whole agreement"; and to the fact that appellees returned the cars and accepted $7,000 in reliance on Meier's agreement giving appellants' personal guarantee for the remaining $30,000. Appellees' attorney testified: "Mr. Meier never said to me, 'I have the personal authority of these two gentlemen [Strange and Addley] to make these promises.' What he did say to me was, 'I will check with respect to the conditions that you want, I will get back to you.' He got back to me agreeing to the conditions I demanded, sent me two confirming letters to that effect and held himself out to be a lawyer with the authority to compromise this matter, and I trusted him."

The trial court denied appellants' motions for directed verdict. The jury returned a verdict against Strange and Addley for $32,000. *Held*:

1. This is a case of first impression. One who serves as attorney for a corporation does not, by virtue of that fact, serve as attorney for the officers of the corporation in their personal capacity, and cannot by virtue of that fact bind the officers to a personal obligation for the debts of the corporation, for the corporation possesses a legal existence separate and apart from that of its officers individually. See *Kilsheimer v. State*, 250 Ga. 549, 550 (299 SE2d 733); *Brega v. CSRA*

*Realty Co.*, 223 Ga. 724, 725 (157 SE2d 738). In his representation of the corporation, the attorney will act at the direction of its officers, but this fact cannot give rise to an assumption by third parties that the attorney for the corporation represents its officers individually, because the officers individually have a separate existence as a matter of law. Id. We conclude, according to the authorities cited herein, that when an agent/attorney purports to give the personal guarantee of one client or alleged client for the debt of another client, or when he purports to act with his client's or alleged client's authority in a subject matter separate from or at conflict with his known actual authority, the agent's actual authority to do those acts must be inquired into by the third party who seeks to rely upon them.

Appellees contend Meier had "apparent authority" under *Brumbelow*, supra, to bind Strange and Addley to a personal guarantee of PSI's debt without a writing by Strange and Addley personally (id. at 676; compare OCGA § 13-5-30 (2)), based on the fact that Meier dealt for PSI at the direction of Strange and Addley, and on all the circumstances which led appellees to assume Meier was agent for Strange and Addley.

Strange and Addley assert that Meier was not their agent. Meier is not heard from in the case. Steve Beizer testified that in a conversation Addley "agreed to the whole agreement," but the meaning of this statement in context is uncertain; it does not prove Addley knew what was in the "whole" agreement, and it is not clear whether this is merely Beizer's conclusion. Beizer did not talk to Strange about this subject. Appellees' claim against Strange and Addley therefore cannot rest on any acts of Strange and Addley, but rises and falls on the contention that *Brumbelow*, supra, allows appellees to rely on Meier's "apparent authority," based on his acts and representations. Strange and Addley contend the hearsay evidence of what Meier said and wrote to Beizer's attorney should not have been admitted but, after all, Meier's statements were offered not to prove their truth but to prove that Beizer's attorney relied upon Meier's promise of a personal guarantee of Strange and Addley. See OCGA § 24-3-1. In *Brumbelow*, reliance on representations or acts of that attorney was dispositive, not the truth of those representations or the authorization of those acts. We find, however, that *Brumbelow* has no application to this case.

" 'The bare . . . denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship. . . .' " *Bishopsgate Ins. Co. v. Cactus Club*, 176 Ga. App. 354, 355 (335 SE2d 685); *Salters v. Pugmire Lincoln-Mercury*, 124 Ga. App. 414 (184 SE2d 56). "An agency can not be established by proof of the declarations of the alleged agent. [Cits.] Persons dealing with an agent . . . for a particular purpose are bound to inquire as

to the extent of his authority. [OCGA § 10-6-50.]" *Harris Loan Co. v. Elliott &c. Co.,* 110 Ga. 302 (34 SE 1003).

The rule announced in *Brumbelow* giving attorneys "apparent authority," which is "plenary . . . from the perspective of the opposing party" (id. at 675), applies only to an "attorney of record" (id.; see Uniform Superior Court Rule 4.2), that is, where the attorney is the attorney for the particular client and is actually authorized to represent the client in the cause or proceeding in which the third party seeks to bind him. (Compare OCGA § 15-19-7 which deals with *a court's* right prima facie to assume an attorney is authorized to appear for a client and its authority to inquire into the fact; see also OCGA § 15-19-8.) See *Vandiver v. McFarland,* 179 Ga. App. 411 (346 SE2d 854) and see 7A CJS, Attorney & Client, § 214 at 374. The fact that an attorney may have actual authority to act for his client at the direction of another person does not mean the attorney is authorized to act as agent for that other person individually; the attorney's actual authority is on its face to be "construed as confined strictly" (id.) to representation of his actual client. See OCGA § 15-19-8.

Nevertheless, appellees argue that the underlying principle of *Brumbelow* is that an attorney's authority is that which the attorney purports to have in the circumstances, which in this case may be summarized pertinently as being that the attorney acted at Strange and Addley's direction as to the affairs of PSI, and that Meier, in giving their personal guarantees for PSI's debt, did so at their direction and did have "apparent" authority "from the perspective of the opposing party" to give their personal guarantee. Id. at 675.

This contention is mistaken. Application of the *Brumbelow* rule in principle to this case is inappropriate, for the rule of apparent authority created in *Brumbelow* is a significant departure from the actual agency rule of "apparent authority."

In agency law, " ' " [a]pparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the [principal], arising from and in accordance with *the [principal's] manifestations to such third persons.*" . . . "Apparent authority to do an act is created as to a third person by written or spoken words or any other *conduct of the principal* which, *reasonably interpreted,* causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." (Cits.)' [Cit.]" *Arrington & Blount Ford v. Jinks,* 154 Ga. App. 785, 787 (1) (270 SE2d 27). " '[A]n estoppel arises . . . against the denial of agency when a principal places a purported agent in a position of apparent authority *so that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent has the authority to perform a particular act* and deals with

the agent upon that assumption. (Cits.)' [Cit.]" (Emphasis supplied.) *Holcomb v. Evans*, 176 Ga. App. 654, 655-656 (337 SE2d 435); *Interstate Fin. Corp. v. Appel*, 134 Ga. App. 407, 411 (215 SE2d 19).

"Apparent authority" is properly based on knowing conduct of the principal, not of the agent, and is moreover based on the third party's reasonableness of relying upon it. In *Home Materials v. Auto Owners Ins. Co.*, 250 Ga. 599, 601 (300 SE2d 139), the Supreme Court held: " ' "The authority of an agent in a particular instance . . . may be established by the *principal's conduct and course of dealing*, and if one holds out another as his agent, and by *his* course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which, as *reasonably deducible* from *the conduct of the parties*, the agent apparently has." ' [Cit.]" (Emphasis supplied.) That is, the principal is estopped to deny the agent has the authority *"reasonably deducible from the conduct of [the] principal."* (Emphasis supplied.) *Germain Co. v. Bank of Camden County*, 14 Ga. App. 88 (1) (80 SE 302), cited in *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 134 (345 SE2d 330). " 'When an alleged principal, by acts or conduct, has *knowingly* caused or permitted another to appear as his agent, he will be estopped to deny the agency, to the injury of third persons who have *in good faith and in reasonable prudence* dealt with the apparent agent on the faith of the relation.' [Cit.]" (Emphasis supplied.) *Folsom v. Miller*, 102 Ga. App. 232, 234 (116 SE2d 1). The principal's estoppel to deny authority "arises only where *the principal, by his conduct,* places an agent in position of apparent authority to do the act [cits.]; or where 'special circumstances' exist which lead a third party *reasonably* to believe authority was present. [Cit.]" (Emphasis supplied.) *Griggs v. Dodson*, 223 Ga. 164, 169 (154 SE2d 252).

Where "[t]here were no manifestations of authority . . . by the principal . . . apparent authority is not in issue," (*Trust Co. v. Nationwide Moving &c. Co.*, 235 Ga. 229, 232 (219 SE2d 162)), so in such a case the principal's estoppel is based on "special circumstances" reasonably leading the third party to believe the authority existed. Special circumstances may include the "inherent power" in a particular agency relationship. Id. at 232-233.

Since in *Brumbelow* there were no manifestations of the principal except the mere hiring of the attorney, the rule in *Brumbelow* actually arises out of the "special circumstances" of an assumed "inherent power" of the attorney to dispose of his client's legal or property rights without authority and over the client's objection. However, the first cases which implied attorneys possessed such inherent power were actually cases involving the conduct and management of a case. See *Dean v. Jackson*, 219 Ga. 552 (134 SE2d 601), which cited *Wade*

*v. Powell*, 31 Ga. 1, 22, which said an attorney had the power to refer a matter to arbitrators without the client's consent, and then volunteered this broad statement: "And why should not this be so? An attorney may confess a judgment against his client, and this involves everything." The other early case cited in *Dean* for this sentiment was decided in 1887, and involved an attorney's consent to sell the property of a "married woman" to satisfy her husband's debt. *Williams v. Simmons*, 79 Ga. 649 (7 SE 133). As to other early cases, see *Davis v. First Nat. Bank*, 139 Ga. 702, 706, 708-709 (78 SE 190); these were generally decided prior to the 1863 enactment of OCGA § 15-19-6. Id. at 706-707.

OCGA § 15-19-6 provides: "Without special authority, attorneys cannot receive anything in discharge of a client's claim but the full amount in cash." The full court in *Evans v. Atlantic Nat. Bank*, 147 Ga. 621 (3) (95 SE 219) held that under this Code section, an agreement by an attorney to compromise *"raise[s] no presumption that the attorney was authorized by his client to make such settlement."* (Emphasis supplied.) See also *Sonnebom & Co. v. Moore Bros.*, 105 Ga. 497 (1) (30 SE 947). This means an attorney is not a general agent for all purposes, but his authority is limited to the "particular purpose" for which he was retained and his authority to do other things must be inquired into; he is a special agent. OCGA § 10-6-50; *Harris Loan Co.*, supra. He has no "inherent power" to dispose of his client's property or legal right, but must obtain special authority. OCGA § 15-19-6; State Bar Disciplinary Rule 7-102 (A) (9). See *Lewis v. Uselton*, 202 Ga. App. 875 (416 SE2d 94), cert. denied; *Vandiver v. McFarland*, supra at 413; 30 ALR 944, 945; 7 AmJur2d, § 156; and 7A CJS, § 214. This want of inherent authority is known to all attorneys. As to the suggestion that an attorney has the right to assume another has such authority, the Justices in *Davis*, supra at 710, could only ponder its illogic: "It can not be readily understood how it can be held that a litigant has a right to insist that his case be litigated and not compromised, and that when he instructs his attorney not to compromise the case the latter is bound by such instructions, and is not at liberty to violate them; and yet how it can at the same time be held that if this want of authority on the part of the attorney is known to the other party or his attorney, such party can nevertheless bind the client by obtaining the agreement of an attorney without authority, who is known to be committing a breach of duty in making such agreement."

In *Evans v. Brooke*, 182 Ga. 197, 207 (184 SE 800), the Supreme Court held that present OCGA § 15-19-5 " 'does not mean that when a client employs an attorney to bring or defend a suit, it ceases to be the client's litigation, that he has no power to say whether he will litigate or compromise his suit, and that the attorney becomes the

owner or absolute master of the litigation, so as to be able to sell or give away his client's property rights by contract, in spite of his client. This is a very different thing from . . . agreements connected [with the management of the litigation].' " If the decision in *Brumbelow* is applied broadly, "occasions might arise where a client's entire property involved in litigation might be agreed away, in spite of his protest, and he might be remitted to a suit [against his own attorney] by which nothing could be realized." *Davis*, supra at 713.

Therefore, according to the decisions of the Supreme Court, we are not authorized to extend *Brumbelow* out of context of its facts. Controlling authorities require the circumstances as to the principal's knowing acts, to be such as to lead the third party *reasonably* to believe the agent has authority to do a certain act. *Griggs v. Dodson*, supra; *Folsom v. Miller*, supra. In the case of a special agent, that is, an agent "for a particular purpose" (OCGA § 10-6-50), persons dealing with the agent must inquire into his authority. We particularly cannot extend the rule in *Brumbelow* to allow attorneys to rely on an "apparent authority" of other attorneys to act for a client other than the actual client.

In order for a third party to estop the principal from denying the agent's actual authority or asserted inherent power (see *Trust Co. v. Nationwide*, supra at 232-233), it must appear that " '*a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent had authority to perform a particular act* and deals with the agent upon that assumption.' " (Emphasis supplied.) *Interstate Fin. Corp. v. Appel*, supra at 411, quoting *Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396 (69 SE2d 309); *Holcomb v. Evans*, supra. This rule coincides with the mandate at OCGA § 10-6-50 as to "special" agents.

It is a question to be decided under the facts of each case whether the complaining party is barred from obtaining relief because of his or her negligence in not ascertaining an agent had actual authority to enter the agreement. See *20/20 Vision Center v. Hudgens*, supra at 134 (fn. 4), which was decided after *Brumbelow*, and which held it was an issue of fact "whether the [third party's] negligence in not inquiring into the agent's authority bars the [third party's] requests for relief." Id. at 134-135. The issue can be decided as a matter of law in this case because appellees and their attorney were charged with the duty stated in OCGA § 10-6-50 as to "special agents," to examine the authority of Meier insofar as he purported to give the personal guarantees of Strange and Addley. Appellees were charged with knowledge as a matter of law that Meier dealt with Strange and Addley as corporate officers, and that the attorney for a corporation does not represent the officers individually, and cannot bind the officers individually for a debt of the corporation without creating a

conflict of interest in himself. Particularly with knowledge of the facial conflict of interest created by Meier's representations that he could bind the corporate officers to the corporation's debt, appellees were charged with the duty to inquire of Strange and Addley not merely whether they "agreed" with the "whole agreement," but whether Meier had actual authority to represent them and to give their personal guarantee. Appellees made no such inquiry, but relied instead on the circumstances surrounding Meier's representations as to his own authority. This agreement by Meier cannot be enforced against Strange and Addley. Appellants were entitled to a directed verdict.

2. The ruling in Division 1 makes it unnecessary to address the remaining enumerations of error.

*Judgment reversed. Beasley and Andrews, JJ., concur.*

## ON MOTION FOR RECONSIDERATION.

Appellees insist the existence of agency relations is always a question of fact; that every agency may be proved by circumstances and apparent relations; and that this verdict was supported by evidence, e.g., that appellants knew Meier was negotiating their personal guarantees with Beizer and failed to repudiate the agreement. But in the cited testimony, Addley said he never agreed to Meier's letter giving my personal guarantee and that Meier had told him Beizer wanted personal guarantees, but he told Meier "there was absolutely no way that I was personally guaranteeing anything. . . . Q. Did you ever tell anybody that Mr. Meier represented you personally or that he was your lawyer in this? A. No, I would have told no one that. It was not the case." Similarly, Strange testified he knew a personal guarantee was one of Beizer's demands but he never told Meier to use it to negotiate, never agreed to pay the corporation's debt, and never authorized Meier to give his personal guarantee.

There is no evidence appellees inquired of Addley and Strange as to Meier's authority to bind Addley and Strange. It is dangerous to say that an attorney's authority to compromise anyone can be established solely by ambiguous or circumstantial events as perceived by an opposing party. Meier was the special agent for Pro Sports, Inc., employed to obtain the release of its Lotus cars, and under OCGA § 10-6-50 appellees were required to examine his authority before relying on his promise of the personal guarantees of two other alleged clients. Appellees' knowledge that Meier dealt with these persons as officers of Pro Sports made it more, not less, essential to examine his authority to give their personal guarantees. It is questionable whether an agreement to which only Pro Sports and a creditor were parties could even bind third parties to Pro Sports' debt (see OCGA § 13-5-

30 (2)); much less does it prove they were his clients.

Finally, appellees insist they had to rely on Meier's "apparent" authority because ethics forbade them to contact appellants to inquire of his actual authority. This ironic assertion is based on Standard 47 of State Bar Rule 4-102, which states: "During the course of his representation of a client, a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party he *knows* to be represented by a lawyer *in that matter* unless he has the prior written consent of the lawyer representing such other party or is authorized by law to do so." This rule does not prohibit a lawyer from contacting a party whom he does not *know* to be represented by a lawyer "in that matter." There is no ethics rule which prohibits attorneys from ascertaining actual authority of opposing counsel before relying on a compromise of an opposing party's interests. Nothing prevented appellees' attorney from seeking Meier's "written consent" to contact Addley and Strange to confirm his authority. An attorney is always "authorized by law" to require an opposing party's personal execution of a settlement and guarantee before the attorney accepts a compromise of that party's interests from his alleged attorney.

*Motion for reconsideration denied.*

DECIDED SEPTEMBER 10, 1992 —
RECONSIDERATION DENIED OCTOBER 6, 1992 — ■■■■■■■■■

*Schreeder, Wheeler & Flint, Debbie A. Wilson*, for appellants.
*Welch, Spell, Reemsnyder & Pless, Anne H. Collidge-Kaplan, Robert A. Burnett*, for appellees.