**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 14, 2014**

# In the Court of Appeals of Georgia

A14A0545. FIRST AMERICAN TITLE INSURANCE COMPANY
v. DJ MORTGAGE, LLC.

PHIPPS, Chief Judge.

After DJ Mortgage, LLC ("DJ Mortgage") asserted claims under numerous title insurance policies issued by First American Title Insurance Company ("First American"), First American filed a complaint seeking a declaration that DJ Mortgage's claims were excluded from coverage under the policies. DJ Mortgage, which counterclaimed for breach of contract, bad faith, and attorney fees, filed a motion for partial summary judgment on the issue of First American's liability under the policies. First American filed a cross-motion for summary judgment. The trial court entered an order granting DJ Mortgage's motion for partial summary judgment

and denying First American's motion for summary judgment. First American appeals from this order. For the reasons set forth below, we affirm in part and reverse in part.

It is well established that "summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[1] A defendant may meet this burden when "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[2] If the moving party meets this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[3]

The evidence shows that in 2007, Twelve Oaks JV, LLC ("Twelve Oaks") contracted to sell 14 units (the "Units") in a Riverdale, Georgia condominium complex to Darius Ashlock ("Ashlock"). DJ Mortgage agreed to extend purchase money loans to Ashlock to buy the Units. The sales were closed in March and April

---

[1] *Bd. of Commrs. of Putnam Cty. v. Barefoot*, 313 Ga. App. 406, 408 (721 SE2d 612) (2011) (punctuation and footnote omitted).

[2] Id. (punctuation and footnote omitted).

[3] Id. (punctuation and footnote omitted).

2

2007 (the "2007 Closings"), and DJ Mortgage was represented at those closings by attorney Jackson Jones, and his law firm, Morris, Hardwick & Schneider. DJ Mortgage did not have a corporate representative physically present at the 2007 Closings.

Jones deposed that he had received instructions from David Dick, who "ran DJ [Mortgage]," to withhold $10,000 from the proceeds of each loan.[4] In light of the withholdings, Twelve Oaks's representative requested that Jones draft security deeds to memorialize the withheld amounts and then demanded that Twelve Oaks "be placed in the first position on those $10,000 mortgages." According to Jones, he telephoned Dick, who, although initially unwilling, ultimately agreed to allow Twelve Oaks "to be placed in the first lien position." First American admits, however, that it remains a disputed issue of fact whether Jones advised Dick that DJ Mortgage's loans would not be filed in the first-priority position.

Jones further testified that "the biggest reason" Dick consented to Twelve Oaks's demand was that "we would get at closing an agreement by [Twelve Oaks]

_____

[4] Dick averred that before the 2007 Closings he had reached an agreement with a representative of Twelve Oaks "providing that $10,000.00 from DJ Mortgage's mortgage loan funds for each Unit would be withheld at closing and not paid to Twelve Oaks" and that they had "agreed that DJ Mortgage would retain these amounts until its mortgage loans to Ashlock had been repaid."

3

that it would not be paid off unless DJ Mortgage was paid off." Jones assessed that such an agreement would "essentially . . . place DJ [Mortgage] in the first position." According to Jones, he prepared a short document, which was then signed by a representative of Twelve Oaks, to the effect that "Twelve Oaks would not be paid off on any of their mortgages until DJ [Mortgage] is paid off." However, neither an original nor a copy of the alleged side agreement was produced by Jones or a party to the transaction, nor is it shown to be referenced in any other document. Twelve Oaks denies that such an agreement was ever made, signed or otherwise. Rather, Twelve Oaks's closing representative deposed that his understanding was that Twelve Oaks "had a first of $10,000" such that it would be "paid $10,000 before anybody on all those units."

It is undisputed, however, that as part of the 2007 Closings, DJ Mortgage held back $10,000 per unit, or $140,000 in total, from the loan proceeds. Ashlock also executed 14 security deeds to Twelve Oaks (the "Twelve Oaks Security Deeds"), each secured by a Unit, and each in the amount of $10,000. By special stipulation in each of the purchase contracts, Ashlock and Twelve Oaks agreed: "Seller to be in 1st position with lender for an amount of $10,000." Jones then recorded the Twelve Oaks

4

Security Deeds first, followed by the 14 security deeds from Ashlock to DJ Mortgage (the "2007 DJ Mortgage Security Deeds").

In connection with the 2007 Closings, First American issued 14 lender's title insurance policies (the "2007 Policies") corresponding to the 2007 DJ Mortgage Security Deeds. Jones signed the 2007 Policies for Landcastle Title LLC, which in turn was designated as the authorized agent for First American.[5] According to Jones, Landcastle Title was the title insurance arm of his law firm. The 2007 Policies excluded from coverage, "[d]efects, liens, encumbrances, adverse claims or other matters: . . . created, suffered, assumed or agreed to by the insured claimant." The 2007 Policies did not contain a specific exception for the Twelve Oaks Security Deeds.

Ashlock subsequently defaulted on the purchase money loans, and DJ Mortgage foreclosed on each of the Units. On or about July 1, 2008 (the "2008 Closing"), DJ Mortgage sold the Units to Capital Marketing Firm, LLC and Premier Partners & Associates, Inc. DJ Mortgage financed a portion of the sale and took back a security deed to secure repayment of a $1,157,320 purchase money note (the "2008

---

[5] First American's complaint also characterizes Jones as having "issued" the 2007 Policies.

DJ Mortgage Security Deed"). Jones again represented DJ Mortgage in connection with the 2008 Closing. The Twelve Oaks Security Deeds remained of record and were not extinguished.

Also in connection with the 2008 Closing, First American issued a lender's title insurance policy to DJ Mortgage (the "2008 Policy") insuring the 2008 DJ Mortgage Security Deed. As with the 2007 Policies, the 2008 Policy did not contain an exception for the Twelve Oaks Security Deeds, but excluded from coverage, "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured . . . ." Jones signed the 2008 Policy for Landcastle Title, which in turn was the designated agent for First American.

Capital Marketing and Premier Partners defaulted on the purchase money note and, in February 2010, DJ Mortgage foreclosed on the Units. Several months thereafter, in July 2010, Twelve Oaks foreclosed on the Twelve Oaks Security Deeds. More specifically, Twelve Oaks exercised the powers of sale in the Twelve Oaks Security Deeds and, after submitting the highest bid at the foreclosure sales, recorded a deed under power from Ashlock to Twelve Oaks for each of the Units.

On July 27, 2010, DJ Mortgage sued Twelve Oaks (the "Twelve Oaks Litigation") seeking, among other things, a declaratory judgment that DJ Mortgage's

interest in the Units was superior to that of Twelve Oaks, and that Twelve Oaks's foreclosures were void and of no effect. Twelve Oaks counterclaimed seeking a declaration that its foreclosures were valid and that it was the fee simple owner of the Units.

After it filed the Twelve Oaks Litigation, DJ Mortgage notified First American that it had a claim under the 2007 Policies and the 2008 Policy (the "Policies"). First American then retained counsel to represent DJ Mortgage in the Twelve Oaks litigation. While the Twelve Oaks Litigation remained pending, First American filed this action against DJ Mortgage seeking a declaration that DJ Mortgage's claims were excluded from coverage under the Policies. In its answer, DJ Mortgage denied First American's declaratory judgment claim and counterclaimed for breach of contract, bad faith, and attorney fees. The trial court then stayed the Twelve Oaks Litigation until this action was concluded.[6]

After the stay was entered, DJ Mortgage moved for partial summary judgment on the issue of First American's liability on the Policies.[7] First American filed a cross-

---

[6] Accordingly, it remained unresolved whether Twelve Oaks's foreclosure on the Twelve Oaks Security Deeds was valid.

[7] DJ Mortgage also contended that First American undertook the defense of DJ Mortgage's title in the Twelve Oaks litigation without reserving the right to later deny

7

motion for summary judgment and contended that it was entitled to a declaration that DJ Mortgage's title claims were excluded from coverage under the Policies as a matter of law. In its order, the trial court (i) denied First American's motion for summary judgment, and (ii) found that the Policies did not exclude coverage for DJ Mortgage's title claims and so granted DJ Mortgage's motion for partial summary judgment. First American appeals.

1. First American contends that the trial court erred in denying its motion for summary judgment. In doing so, it acknowledges that there remain disputed issues of fact as to (i) whether DJ Mortgage was aware that its liens would not be filed in first position and (ii) the existence of the "side agreement" in which Twelve Oaks allegedly agreed that it would receive the $10,000 holdback from the purchase price of each Unit only after DJ Mortgage's loan was paid. First American contends, however, that these issues of fact are not material to its motion for summary judgment because DJ Mortgage's agent and attorney, Jones, intentionally filed the Twelve Oaks

---

coverage and was thereby estopped from denying coverage under the Policies. The trial court ruled that First American had reserved its rights and rejected DJ Mortgage's argument that First American was estopped from denying coverage. DJ Mortgage has not cross-appealed from this ruling.

8

Security Deeds in a first lien position.[8] We disagree with First American that there are no genuine issues of material fact remaining and so affirm the trial court's denial of its motion for summary judgment.

As noted above, the Policies excluded from coverage, "[d]efects, liens, encumbrances, adverse claims or other matters . . . created, suffered, assumed or agreed to by the insured . . . ." Policy exclusions are construed "most strongly against the insurer and in favor of providing the indemnity sought."[9] Although exclusions in insurance policies are strictly construed against the insurer, an exclusion "that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured."[10]

---

[8] For purposes of the appeal, there appears to be no dispute that the Policies, absent exclusions, exceptions, and subject to conditions and stipulations, provide coverage for claims based on the lack of priority of the lien of insured security instruments over any other lien or encumbrance. In other words, First American relies on the exclusion, and not other language of the Policies concerning coverage, as the basis for its declaratory judgment action.

[9] *Fidelity Nat. Title Ins. Co. v. Matrix Financial Svcs. Corp.*, 255 Ga. App. 874, 878 (1) (b) (567 SE2d 96) (2002) (punctuation and footnote omitted).

[10] *Garland, Samuel & Loeb, P.C. v. Am. Safety Cas. Ins. Co.*, 287 Ga. App. 254, 256 (651 SE2d 177) (2007) (citation and punctuation omitted).

In context, "suffered" or "agreed to" requires the permission or consent by the insured to the "[d]efects, liens, encumbrances, adverse claims or other matters."[11] The plain meaning of "create" is to "bring into being; to cause to exist."[12] And in construing an identical exclusion in a First American title insurance policy, the 11th Circuit Court of Appeals in *Cynergy, LLC v. First Am. Title Ins. Co.*[13] defined "assume" as requiring that the insured "must have had actual, subjective knowledge of the . . . issue and appreciated its effect."[14] We find *Cynergy* to be persuasive and discern no good reason to adopt a different meaning of "assume" for purposes of this dispute. However, absent from the Policies' exclusion is the insured's "knowledge" of defects, liens, encumbrances, adverse claims or other matters. It follows that

---

[11] For example, a plain meaning of "agree" is to "[t]o admit; concede," and a plain meaning of "suffer" is "[t]o allow; to permit." Webster's New International Dictionary of the English Language, pp. 51, 2520 (2d. Ed. 1961).

[12] Webster's New International Dictionary of the English Language, p. 621 (2d. Ed. 1961).

[13] 706 F3d 1321 (11th Cir. 2013).

[14] Id. at 1325 (B).

"created, suffered, assumed or agreed to" cannot be deemed synonymous with the insured's mere knowledge, either actual or constructive.[15]

With the foregoing in mind, we turn to First American's argument that in light of attorney Jones's "knowledge and actions," DJ Mortgage agreed to or created the priority of the Twelve Oaks Security Deeds and that its title claims are excluded under the Policies. It is true that Jones's knowledge, gained in the course of his duties as DJ Mortgage's attorney, can be attributed to DJ Mortgage.[16] However, as we found above, for purposes of the exclusion DJ Mortgage's knowledge would not be sufficient to show that it "created, suffered, assumed or agreed to" the priority of the Twelve Oaks Security Deeds. Thus, we cannot conclude that, because Jones represented DJ Mortgage at the 2007 Closings and the 2008 Closing and knew about the Twelve Oaks Security Deeds, DJ Mortgage thereby created, suffered, assumed or

---

[15] See, e.g., *Miller County Board of Education v. McIntosh*, 326 Ga. App. 408, 413 (1) (756 Se2d 641) ( 2014) (noting that "as a principle of construction (applicable to statutes and contracts alike), "[e]xpressio unius est exclusio alterius," or "[t]he express mention of one thing implies the exclusion of another"). The 2007 Policies also provided that "knowledge" meant "actual knowledge, not constructive knowledge."

[16] See *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 631 (1) (a) (466 SE2d 872) (1995) (noting that "[i]t is well settled . . . that knowledge of an attorney is knowledge of his client, when such notice and knowledge come to the attorney in and about the subject matter of his employment") (citation and punctuation omitted).

11

agreed to any defects, liens, encumbrances, or adverse claims attributable thereto for purposes of the Policies.

Jones, however, also intentionally filed the Twelve Oaks Security Deeds in first priority position, and it follows, First American contends, that such act bound DJ Mortgage and established that DJ Mortgage created, agreed to, suffered, or assumed the title defect giving rise to its claims. However, we cannot agree that DJ Mortgage created the alleged defect. The filing of the Twelve Oaks Security Deeds in the first priority position was required by the purchase agreements between Ashlock and Twelve Oaks. DJ Mortgage is not shown to be a party to the purchase agreements or the Twelve Oaks Security Deeds and, construing the term strictly for purposes of the exclusion, was not the entity that brought into existence, or "created," the liens contemplated thereby.

Further, although Jones acted as DJ Mortgage's closing attorney, he was not a general agent of DJ Mortgage. Rather, an attorney's "authority is limited to the particular purpose for which he was retained."[17] And an attorney "has no 'inherent power' to dispose of his client's property or legal right, but must obtain special

---

[17] *Addley v. Beizer*, 205 Ga. App. 714, 719 (423 SE2d 398) (1992) (punctuation omitted). See OCGA § 10-6-50.

authority."[18] First American points out that, as a rule, the client is nevertheless bound by the acts of his attorney within the scope of his apparent authority,[19] which in this case, it contends, included acting as DJ Mortgage's sole representative at the closings and recording documents on DJ Mortgage's behalf.[20] However, "[a]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."[21] First American fails to show that DJ Mortgage led it to believe anything with respect to Jones's authority. "Any apparent authority that might otherwise exist vanishes in the presence of the person's actual or constructive knowledge of what the agent is or is not empowered to do."[22] Although Jones acted

---

[18] *Addley*, supra (citation omitted).

[19] *Wilen v. Murray*, 292 Ga. App. 30, 32 (1) (663 SE2d 403) (2008).

[20] See, e.g., *Brady v. Sappington*, 40 Ga. App. 781 (151 SE 525) (1930) (finding that "[t]he authority of a special agent will be construed to include all necessary and usual means for effectually executing it")

[21] *Holcomb v. Evans*, 176 Ga. App. 654, 655-656 (1) (337 SE2d 435) (1985) (citation and punctuation omitted).

[22] *Gosule v. Bestco, Inc.*, 227 Ga. App. 863, 864 (1) (490 SE2d 532) (1997) (citation and punctuation omitted).

13

as DJ Mortgage's closing attorney, the evidence also shows that it was Jones who signed the Policies for Landcastle Title and so bound First American (for whom Landcastle Title was an authorized agent). And "[t]he knowledge of the dual agent is imputable to his principals."[23] Thus, a trier of fact could conclude that First American had reason to know that Jones was not authorized by DJ Mortgage to give priority to the Twelve Oaks Security Deeds and that First American would not have been justified in assuming that he was so authorized. Under the circumstances, DJ Mortgage would not be precluded from showing that Jones acted without authority and that it never created, suffered, assumed, or agreed to the priority of the Twelve Oaks Security Deeds.[24]

In light of the foregoing, we find that the undisputed material facts do not show, as a matter of law, that DJ Mortgage's title insurance claims are excluded under

---

[23] *Herron v. Interstate Life & Acc. Co.*, 55 Ga. App. 534, 536 (190 SE 631) (1937).

[24] See, e.g., *Gosule*, supra at 864-865 (1) (noting that only innocent parties may rely on doctrine of apparent authority).

the Policies. Accordingly, the trial court did not err in denying First American's motion for summary judgment.[25]

2. First American also contends that the trial court erred in granting DJ Mortgage's motion for partial summary judgment. As issues of material fact remain, we agree that the trial court erred in granting summary judgment to DJ Mortgage as to the availability of coverage under the 2007 Policies. We also find, however, that there is no evidence by which DJ Mortgage's claims may be excluded under the 2008 Policy, and so affirm the trial court's grant of summary judgment in connection with that policy.

In granting partial summary judgment to DJ Mortgage, the trial court concluded that if DJ Mortgage acquiesced to the Twelve Oaks Security Deeds it did so conditioned on Twelve Oaks's signing the side agreement, which the trial court characterized as a subordination agreement, such that DJ Mortgage's "security interest was protected over Twelve Oaks's record liens." There was, the trial court

---

[25] First American also argues that the trial court erred in relying on the alleged side agreement because the agreement was not material and, if relevant, was not competent evidence. Pretermitting whether the trial court erred as First American alleges, we find no grounds for reversal. See, e.g., *Groover v. Johnston*, 277 Ga. App. 12, 17 (2) (625 SE2d 406) (2005) (denial of summary judgment will be affirmed if right for any reason).

found, "no evidence to suggest that DJ [Mortgage] agreed to be in a position junior to Twelve Oaks." Consistent with the trial court's reasoning, DJ Mortgage argues that the deciding question is whether DJ Mortgage "believed" that the Twelve Oaks Security Deeds were superior to DJ Mortgage's interest when the Policies were issued.

We cannot agree with DJ Mortgage that what it "believed" about the priority of the Twelve Oaks Security Deeds determines whether the exclusion applies. If the exclusion applied only to "defects," then it might be more persuasively argued that, in order to apply, the insured must have intended the insured's title to be subject to a defect. The exclusion, however, is more broad, applying to "[d]efects, liens, encumbrances, adverse claims or other matters." Even strictly construed, the plain language of the exclusion did not require DJ Mortgage to subjectively perceive that its liens were inferior to the Twelve Oaks Security Deeds.[26] Rather, viewed in a light most favorable to First American, as the respondent on summary judgment, the

---

[26] See *First American Title Ins. Co. v. Action Acquisitions, LLC*, 187 P3d 1107, 1112-1113 (III) (Ariz. 2008) (finding that exclusion for loss resulting from risks "created, allowed, or agreed to by" an insured "applies whenever the insured intended the act causing the defect, not only when the insured intended the defect or when the insured engaged in misconduct. Title insurance principally protects against unknown and unknowable risks caused by third-party conduct, not intentional acts of the policyholder.").

16

evidence shows that, as to the 2007 Closings, Jones had informed DJ Mortgage, through Dick, that Twelve Oaks had demanded that its liens be filed in the first position and that Dick "ultimately agreed to allowing [the Twelve Oaks Security Deeds] to be placed in the first lien position." According to Jones, Dick made that decision with an understanding that "we would get at closing an agreement by [Twelve Oaks] that it would not be paid unless DJ Mortgage was paid off," such that DJ Mortgage was "essentially" in first position.[27] But even if DJ Mortgage thought that its risks were low or even non-existent, a trier of fact could conclude that DJ Mortgage nevertheless made a considered decision to accede to Twelve Oaks's demands and, rather than refuse to go forward with the 2007 Closings, authorized the Twelve Oaks Security Deeds to be filed in the first priority position with respect to the 2007 DJ Mortgage Security Deeds. We conclude, therefore, that, as to the 2007 Policies, there remains a genuine issue of material fact as to whether DJ Mortgage

---

[27] See, e.g., *Cameron v. Churchill Mgt. Corp.*, 249 Ga. 362, 363-64 (290 SE2d 474) (1982) (finding that "the legal order or priority as between mortgages and other liens or claims may be fixed, reversed, or modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder").

17

"suffered," "assumed," or "agreed to" the priority of the Twelve Oaks Security Deeds.[28]

Nonetheless, as to the 2008 Policy, we agree with DJ Mortgage that First American cannot show that DJ Mortgage's coverage claims are excluded. As with the 2007 Closings, Jones acted as DJ Mortgage's attorney in the 2008 Closing and signed the 2008 Policy, which did not expressly exclude the Twelve Oaks Security Deeds. But unlike with the 2007 Closings, there is no evidence that a general agent of DJ Mortgage knowingly agreed to go forward with the 2008 Closing on the basis that the security for its loan would be in a lower priority position than the Twelve Oaks Security Deeds. And, as we found in Division 1,[29] even if Jones knew that the Twelve Oaks Security Deeds remained of record, his knowledge cannot establish that DJ Mortgage "created, suffered, assumed or agreed to" the priority of the Twelve Oaks Security Deed over its newly insured security title. As there is an absence of evidence whereby a trier of fact could find that DJ Mortgage's claims are excluded as to the

---

[28] See *Cynergy*, supra, at 1331-1333 (where insured lender was aware that the property lacked a dedicated right of access, but nevertheless took steps to safeguard its interests before making the loan, the insured "assumed" that condition within the meaning of the title insurance policy).

[29] Supra.

18

2008 Policy, we affirm the trial court's grant of summary judgment to the extent that it found that, as a matter of a law, the 2008 Policy does not exclude coverage for DJ Mortgage's title claims.[30]

In sum, we affirm the trial court's denial of First American's motion for summary judgment. We also affirm the trial court's grant of DJ Mortgage's motion for partial summary judgment to the extent it found that DJ Mortgage's claims were not excluded under the 2008 Policy. However, we reverse the trial court's grant of DJ Mortgage's motion for partial summary judgment to the extent that it found that DJ Mortgage's claims were not excluded under the 2007 Policies.

*Judgment affirmed in part and reversed in part. Ellington, P. J., concurs. McMillian, J., concurs in judgment only*.

---

[30] Given this finding, we need not reach DJ Mortgage's argument that in light of Jones's testimony, First American is bound by its decision not to except the Twelve Oaks Security Deeds from the 2008 Policy and is estopped from denying coverage thereunder.