## 70567. BISHOPSGATE INSURANCE COMPANY v. CACTUS CLUB, INC.
### (335 SE2d 685)

CARLEY, Judge.

The issue presented for resolution in the instant case is whether the appellant-defendant, an insurer not authorized to transact business in Georgia, is nonetheless subject to the jurisdiction of the courts of this state. This issue arose in the following manner: Appellee-plaintiff insured, a Georgia resident, filed the instant action, invoking the provisions of the "Unauthorized Insurers Process Act," which is codified at OCGA § 33-5-50 et seq. Accordingly, service was made upon the Insurance Commissioner pursuant to OCGA § 33-5-53 (a). The Insurance Commissioner then sent a copy of the complaint by certified mail to appellant at its address in Nashville, Tennessee. See OCGA § 33-5-53 (b). Appellant raised the defense of lack of personal jurisdiction by way of a motion to dismiss, as well as by inclusion in its answer. After the trial court conducted a hearing, it ruled "that there is sufficient contact as provided by OCGA § 33-5-52 . . . to subject the [appellant] to the jurisdiction of this court. . . ." However, the trial court certified its order for immediate review and appellant applied to this court for an interlocutory appeal. Appellant's petition was granted in order that we might review the applicability of OCGA § 33-5-50 et seq. to the underlying facts evidenced in the instant case.

Appellant offered an affidavit in support of its motion to dismiss. The trial court considered the affidavit, thereby causing the motion to dismiss to "be treated as one for summary judgment. . . ." OCGA § 9-11-12 (b). On appeal, appellee attacks the competency of the affidavit. The record demonstrates that the affidavit contains the affiant's statement that "he has personal knowledge of the facts contained herein" and "is an agent for [appellant] and has served in that capacity for over two (2) years." " 'A statement in the jurat to the effect that the affidavit is made upon personal knowledge is generally sufficient' to comply with [OCGA § 9-11-56 (e)]. . . ." *Georgia Hwy. Ex-*

*press v. W. D. Alexander Co.*, 124 Ga. App. 143 (183 SE2d 215) (1971). "The bare assertion or denial of the existence of an agency relationship is a statement of fact when made by one of the purported parties to the relationship. . . ." *Salters v. Pugmire Lincoln-Mercury*, 124 Ga. App. 414 (184 SE2d 56) (1971). We find no basis for refusing to attribute to the affidavit the competency that is shown on its face.

Appellee offered nothing in opposition to appellant's motion. Accordingly, the undisputed evidence of record in the instant case shows that appellant has no contact with the State of Georgia except insofar as appellee's policy is concerned. Appellant did not solicit, issue or deliver the policy to appellee in Georgia. The policy at issue afforded coverage of rental property located in Tennessee, and all activity leading up to and including appellant's issuance and delivery of the policy occurred in that state. It is, however, also undisputed that appellant did subsequently mail premium notices directly to appellee in Georgia and did accept the premium payments that appellee mailed back from this state. Among the enumerated acts, "any" of which, if effected in this state "by mail or otherwise," will trigger the applicability of the Unauthorized Insurers Process Act, is: "[t]he collection of premiums, membership fees, assessments, or other considerations for the contracts. . . ." OCGA § 33-5-52 (3). Appellee contends that the literal language of OCGA § 33-5-52 (3) authorizes the exercise of personal jurisdiction over an unauthorized insurer in the mere event that the insurer uses the mail to collect premiums from a Georgia insured and without further regard to any other consideration, such as whether the underlying policy itself was issued or delivered in this state. But see OCGA § 33-5-51.

However, in order to resolve the instant case, we need not make a broad ruling as to the construction to be given our Unauthorized Insurers Process Act. It is clear that the underlying intent of the Unauthorized Insurers Process Act is to render foreign and alien insurers subject to suit and judgment in Georgia when, notwithstanding their unauthorized status, they have nonetheless transacted business in this state. See *Iowa State Travelers Mut. Assn. v. Cadwell*, 113 Ga. App. 128 (1) (147 SE2d 461) (1966). See also OCGA § 33-5-52 (4) which refers to "[a]ny *other* transaction of business." (Emphasis supplied.) Transaction of the business of insurance in this state requires a certificate of authority from the Insurance Commissioner, "except as to any transactions as are expressly otherwise provided for in [the Georgia Insurance Code]." OCGA § 33-3-2 (a). Accordingly, it would necessarily follow that, when an act enumerated in OCGA § 33-5-52 is relied upon as authorizing the exercise of personal jurisdiction over an *unauthorized* insurer, consideration must be given to whether, under the given circumstances, the insurer was otherwise required to obtain

the requisite certificate of authority before committing the act. If *no* certificate from the Commissioner would otherwise have been required to authorize the insurer's act in this state, it would be illogical to hold that the insurer is nonetheless subject to this state's jurisdiction on the basis that it transacted *unauthorized* business here.

Among those transactions for which the Insurance Code does "expressly otherwise provide" that *no* certificate of authority shall be required is the following: "As to an insurance coverage on a subject of insurance not resident, located, or expressly to be performed in Georgia at the time of issuance and solicited, written, and delivered outside Georgia, no certificate of authority shall be required of an insurer as to subsequent transactions in Georgia on account of such insurance; and *this title shall not apply to such insurance* or insurance coverage, except for the purpose of premium tax requirements." (Emphasis supplied.) OCGA § 33-3-2 (d). The impact of this statute in the instant case is clear. It exempts appellant from the certification requirement as to "subsequent transactions" in Georgia with regard to the instant policy, which covered property in Tennessee and which was solicited, written, and delivered in that state. Compare *Iowa State Travelers Mut. Assn. v. Cadwell*, supra. Mere use of the mails to collect premiums from appellee was such a subsequent act by appellant and therefore, would not constitute an *unauthorized* act in this state within the meaning of OCGA § 33-5-52. By specifically declaring the Georgia Insurance Code, of which the Unauthorized Insurers Process Act is a part, inapplicable to the instant policy, OCGA § 33-3-2 (d) clearly establishes that, pretermitting a "connection" between a Georgia resident-insured and the unauthorized insurer, the policy provides no predicate for the establishment of jurisdictional "contacts" between the State of Georgia and the insurer. See generally *Shellenberger v. Tanner*, 138 Ga. App. 399, 408 (227 SE2d 266) (1976).

Accordingly, it is clear that OCGA § 33-5-50 et seq. has no applicability to the instant policy. The trial court erred in denying appellant's motion to dismiss for lack of personal jurisdiction.

*Judgment reversed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 17, 1985 —
REHEARING DENIED OCTOBER 7, 1985 —

*Paul R. Jordan, Richard J. Dreger*, for appellant.
*E. T. Hendon, Jr.*, for appellee.