A00A0056. RAYBORN v. LONG et al.
(532 SE2d 433)

McMURRAY, Presiding Judge.

Walter S. Rayborn brought this action for damages against Stan W. Long and Donald Long, individually and purportedly d/b/a Century 21, Georgia Farm Realty (GFR), alleging that he advised Stan Long he desired to buy a certain 28.5-acre parcel of real property

---

advertised for sale by the Long defendants and that on May 18, 1998, he presented an earnest money check and an executed contract to purchase the property "as is" for $38,900.

Rayborn further alleged that when he sought to close on the property, he learned that the owner, Newell Yvonne Shaw, had accepted the offer of Mike Sigman on May 7; that for $10,048.50, Sigman assigned to P. D. Miller, Jr. the right to purchase the property; and that Miller had bought the property for $33,016.50. Rayborn contended that defendants never advised him of the existence of any other contract for the property. Thereafter, Rayborn purchased the property, less ten acres, from Miller for $55,000. Rayborn seeks to recover $32,000, representing the value of the ten acres retained by Miller, and the difference between the price he offered and the price he paid Miller.

Defendants substantially admitted the chronology but denied all liability to Rayborn under theories of breach of contract or fiduciary duty. After limited discovery, defendants moved for summary judgment, supporting their motion with the following evidence:

Donald Long deposed that, in his capacity as a real estate sales agent for GFR, he obtained from Shaw an exclusive listing agreement to sell the property for $1,500 per acre. On April 30, 1998, GFR received a contract executed by Sigman, who offered to purchase the property for $33,016.50. This document was signed by Shaw on May 7, 1998, at 4:00 p.m. The next day Donald Long received a contract signed that day by Rayborn, offering to purchase the property for $38,500. This document recited that it was "open for acceptance until 12 o'clock p.m. on the 15 day of May 98." (Underlined terms were handwritten.) Rayborn also submitted a check for earnest money for $500.

When Rayborn submitted this contract, Donald Long was unaware that Shaw had already signed the Sigman contract. Donald Long deposed he nevertheless told Rayborn that "another contract was outstanding." Once he learned that Shaw had signed the Sigman contract, Donald Long informed Rayborn that his contract had not been accepted and instructed GFR to return Rayborn's earnest money. Meanwhile, in an undated writing, Sigman conveyed his rights to purchase the Shaw property to Miller for $10,048.50. On June 12, 1998, Miller purchased the property from Shaw for $33,016.50, for which GFR was paid an eight percent commission of $2,641.32. GFR never had a listing agreement with Rayborn, and neither defendant Donald Long nor GFR served as a real estate agent or broker for Rayborn.

Stan Long deposed as follows: in May 1998, he went to erect a GFR "For Sale" sign on Shaw's property. There, he met a man who identified himself as Rayborn. While Stan Long discussed the dimen-

sions of the property, at no time did he discuss with Rayborn either the sales price or the submission of a purchase offer. Stan Long had no further contact with Rayborn.

In opposition to defendants' motion, Rayborn deposed that on May 11, Stan Long told him the asking price was $41,000 while Rayborn was willing to pay $35,000. Rayborn had no checkbook with him but "gave Stan Long $20.00 cash to bind the property." On May 18, 1998, Rayborn telephoned GFR and was informed that his offer to purchase the property for $35,000 was not accepted but that "seller would accept $38,900.00." On that day, Rayborn met Stan Long who "presented [Rayborn] one copy of a contract for the amount stated[1] which [Rayborn] signed. . . ." Rayborn also tendered the $500 earnest money. On June 4, 1998, Rayborn spoke with defendant Stan Long and was informed "another contract had been signed. . . ." On June 8, 1998, Rayborn "tendered the balance of the purchase price in accordance with the contract executed by him. . . ." On June 15, the certified check tendered as the balance of the purchase price was returned to Rayborn. On July 3, Rayborn purchased a portion of the property from Miller for $55,000.

The superior court granted defendants' motion for summary judgment. This appeal followed. *Held*:

In three related enumerations of error, Rayborn contends the trial court erred in concluding that: (1) the defendants owed no duty to Rayborn to present his offer to Shaw; (2) the defendants owed no duty to reveal material facts about the property; and (3) no genuine issue of material fact existed for jury resolution.

1. Rayborn contends the real estate agents owed him a fiduciary duty after he executed a sales contract for a purchase price that Stan Long told Rayborn the owner would accept. We disagree. "The relationship between the real estate agent and the *seller* is a fiduciary one, and imposes on the agent the duty of exercising the utmost good faith and loyalty toward the principal." (Citations and punctuation omitted; emphasis supplied.) *Brady v. Dandridge*, 190 Ga. App. 543, 545 (3) (379 SE2d 429).

The defendants' denial of an agency relationship with Rayborn is probative evidence that none existed. *Bishopsgate Ins. Co. v. Cactus Club*, 176 Ga. App. 354, 355 (335 SE2d 685). No evidence demonstrated that the real estate agents acted in a dual agency that would impose on them any fiduciary obligations owed to prospective purchasers. The fact that one agent presented the prospective purchaser

---

[1] The contract price offered by Rayborn in writing was only $38,500, which is less than the amount Stan Long allegedly told Rayborn would be acceptable. This counteroffer would reject any offer to sell for $38,900, for an offer must be accepted as made. *Benton v. Shiver*, 254 Ga. 107 (326 SE2d 756).

with a form real estate sales contract already filled out with those terms the agent believed acceptable to the seller does not make the real estate agent an agent for the purchaser. That was a mere accommodation or courtesy. See Rules & Regs. of the State of Ga., Chapter 520 (Rules & Regs. of the Ga. Real Estate Commission), Rule 520-1-.40 (5) (a) (10), authorizing even unlicensed support personnel to "[type] contract forms as directed by [a] licensee. . . ."

Rayborn's reliance on *Siler v. Gunn*, 117 Ga. App. 325 (160 SE2d 427) is misplaced. Shaw's acceptance of Sigman's offer on May 7 preceded Rayborn's dealings with either defendant on May 11. Shaw could not have accepted Rayborn's later offer without breaching the existing contract, rendering performance of Rayborn's contract impossible. For this reason, the real estate agents' failure to present Rayborn's contract and earnest money to Shaw after she had already accepted a lower offer renders all factual issues immaterial.

2. Remaining enumerations urge a factual issue remains regarding an alleged duty for the agents to "reveal material facts regarding the sale of the property . . . on which plaintiff [had] made a deposit and executed a contract prepared by defendants." Specifically, Rayborn complains that he was never given any notice of another contract until he indicated his desire to close in early June, in violation of a real estate agent's duty not to make any material misrepresentations imposed by OCGA § 43-40-25 (a) (21).

Donald Long testified that, at the time Rayborn submitted his written offer, Long informed Rayborn that "another contract was outstanding." But Rayborn's affidavit states he had no knowledge of the possible sale of the property before May 11. Nevertheless, it remains uncontradicted that when Donald Long received Rayborn's signed offer on May 8, he did not know that Shaw had already accepted Sigman's April 30 offer to buy the property for approximately $33,000. Consequently, any misrepresentation by Donald Long that Shaw would accept $38,900 is an innocent one, made without full knowledge of the operative facts, and not an intentional misrepresentation made with the intent to deceive. When Rayborn subsequently inquired about closing, he was informed that the property had already been sold and his earnest money was returned. There is no contention that either defendant, in the face of direct inquiry, made an affirmative misrepresentation of material fact. In our view, the real estate agents did not have an affirmative duty to voluntarily disclose the existence of other bidders when soliciting or accepting written offers from potential purchasers. Compare *Ga. Real Estate Comm. v. Peavy*, 229 Ga. App. 201, 202 (493 SE2d 602) (real estate agent's intentional failure to disclose malfunctioning septic system to buyers constituted a gross misrepresentation under OCGA § 43-40-

25 (a) (21)). The trial court correctly granted defendants' motion for summary judgment.

*Judgment affirmed. Johnson, C. J., and Phipps, J., concur.*

DECIDED MARCH 24, 2000.

*Lehman & Cauley, Thomas L. Lehman,* for appellant.
*Kirbo & Kendrick, David A. Kendrick,* for appellees.